**Electronically Filed
Supreme Court
SCWC-13-0000127
31-JUL-2014
07:54 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

OAHU PUBLICATIONS, INC., dba The Honolulu Star-Advertiser,
Petitioner/Plaintiff-Appellee,

vs.

NEIL ABERCROMBIE, in his official capacity
as Governor of the State of Hawai'i,
Respondent/Defendant-Appellant.

SCWC-13-0000127

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(ICA NO. CAAP-13-0000127; CIV. NO. 11-1-1871)

JULY 31, 2014

RECKTENWALD, C.J., NAKAYAMA, J., AND CIRCUIT JUDGE
BROWNING, IN PLACE OF McKENNA, J., RECUSED, CIRCUIT JUDGE
CASTAGNETTI, IN PLACE OF POLLACK, J., RECUSED, AND
CIRCUIT JUDGE CHANG, IN PLACE OF WILSON, J., RECUSED

OPINION OF THE COURT BY RECKTENWALD, C.J.

We consider whether the Intermediate Court of Appeals

(ICA) erred in denying Oahu Publications' request for appellate

attorneys' fees and costs.  In brief summary, Oahu Publications

filed the underlying suit against The Honorable Neil Abercrombie,

in his official capacity as Governor of the State of Hawaiʻi,

under the Uniform Information Practices Act (UIPA), Hawaiʻi

Revised Statutes (HRS) Chapter 92F, seeking to obtain the list of

nominees considered for a vacancy on the Hawaiʻi Supreme Court.

After the parties filed cross-motions for summary judgment, the

circuit court[1] entered summary judgment in favor of Oahu

Publications, ordering disclosure of the nominees' names.  The

circuit court also awarded Oahu Publications attorneys' fees and

costs pursuant to HRS § 92F-15(d) (1993).

The Governor appealed to the ICA only with regard to

the circuit court's award of attorneys' fees and costs.  After

the parties had briefed the case, the ICA dismissed the appeal

for lack of jurisdiction because of an error in the circuit

court's judgment.  After the circuit court corrected the

judgment, the Governor filed a second appeal.  In the second

appeal, the parties agreed to re-submit the briefs filed in the

first appeal, with updated citations to the record on appeal.  In

a summary disposition order, a majority of the ICA affirmed the

circuit court's award of $69,027.06 in fees and costs to Oahu

Publications, except for $564.60 of photocopying costs.

Oahu Publications then filed a request for appellate

---

[1]     The Honorable Karl K. Sakamoto presided.

fees and costs in the ICA, which included fees accrued during both the first and second appeals.  The ICA denied Oahu Publications' request for fees incurred during the first appeal, concluding that the request was untimely under Hawaiʻi Rules of Appellate Procedure (HRAP) Rule 39(d)(2) (2007).  The ICA granted Oahu Publications' request with respect to the second appeal in its entirety.

In its application, Oahu Publications presents a single question:

> Are attorneys' fees incurred in an earlier phase of appellate litigation — which the ICA dismissed for lack of a final circuit court judgment, but which did not resolve the action — recoverable by the prevailing complainant under Haw. Rev. Stat. § 92F-15(d) after the ICA rules in its favor on the merits?

We hold that the ICA erred in not considering Oahu Publications' request for fees and costs incurred during the first appeal.  Oahu Publications was not a prevailing party for purposes of HRS § 92F-15(d) until after the second appeal was decided.  Section 92F-15(d) provides that if the complainant prevails, the court shall assess reasonable attorneys' fees and all other expenses.  Although Oahu Publications prevailed in the circuit court and ultimately prevailed in the ICA, it was not a prevailing party for purposes of HRS § 92F-15(d) when the ICA dismissed the first appeal for lack of jurisdiction.  Oahu Publications prevailed in the ICA only after the second appeal was decided.

Moreover, even assuming Oahu Publications could have filed a request for fees and costs pursuant to HRS § 92F-15(d) upon dismissal of the first appeal, the ICA erred in denying Oahu Publications' request following resolution of the second appeal. Although HRAP Rule 39(d)(2) generally provides that "[a] request for fees and costs or necessary expenses must be filed . . . no later than 14 days" after the time for filing a motion for reconsideration has expired or such motion has been decided, it further provides that the appellate court "may" nevertheless consider such a request. Thus, the ICA had the discretion to consider an untimely request for fees and costs. Tortorello v. Tortorello, 113 Hawaiʻi 432, 153 P.3d 1117 (2007). Given the express language of HRS § 92F-15(d), which provides that the court "shall assess against the agency reasonable attorney's fees and all other expenses reasonably incurred in the litigation," the ICA should have considered Oahu Publications' request for fees incurred in the first appeal even if it was untimely. HRS § 92F-15(d) (emphases added).

We therefore vacate in part the ICA's January 6, 2014, and January 24, 2014 orders, and vacate the ICA's March 3, 2014 judgment on appeal.

## II. Background

Oahu Publications filed a four-count complaint pursuant

to the UIPA, HRS Chapter 92F, seeking to compel the Governor "to honor Hawaiʻi's strong public policy of open, transparent, and accountable government" by publicly disclosing "the list of the nominees presented to him in January 2011 by the Judicial Selection Commission (JSC) from which he appointed Associate Justice Sabrina McKenna" to the Hawaiʻi Supreme Court. Oahu Publications alleged that the Governor rejected multiple requests to release the list of judicial nominees, and that the Governor stated he would not disclose the list unless a court ordered him to do so.

Oahu Publications' complaint included the following counts: (1) failure to grant access to requested records, in violation of HRS § 92F-11 (1993 & Supp. 2011); (2) failure to respond to the request in a timely manner, in violation of Hawaiʻi Administrative Rules (HAR) § 2-71-13 (1999); (3) reasonable attorneys' fees and expenses, pursuant to HRS § 92F-15(d) (1993);[2] and (4) a request for declaratory relief. Oahu Publications' prayer for relief included a request for "an order and judgment compelling Governor Abercrombie to disclose the list presented to him by the JSC of the nominees to fill the vacancy in the office of Associate Justice of the Supreme Court of Hawaiʻi created by Governor Lingle's appointment of then-

---

[2] Section 92F-15(d) provided then, as it does now, that, "If the complainant prevails in an action brought under this section, the court shall assess against the agency reasonable attorney's fees and all other expenses reasonably incurred in the litigation." HRS § 92F-15(d).

Associate Justice Mark Recktenwald as Chief Justice"; a declaratory judgment that after the Senate has consented to a judicial appointment, a governor must disclose the list of judicial nominees; and an order assessing reasonable attorneys' fees and expenses pursuant to HRS § 92F-15(d).

Oahu Publications filed a motion for summary judgment, and the Governor subsequently filed a cross-motion for summary judgment. Following a hearing on November 14, 2011, the circuit court granted Oahu Publications' motion for summary judgment. The circuit court concluded that the Governor was required to disclose the list of judicial nominees pursuant to HRS § 92F-11, and that the Governor had failed to demonstrate that one of the enumerated exceptions set forth in HRS § 92F-13 (1993) applied. The circuit court further concluded that the limitations on disclosures of government records to other agencies, set forth in HRS § 92F-19 (1993 & Supp. 2011), did not apply. The circuit court filed its written order on December 13, 2011.

In the meantime, on November 28, 2011, Oahu Publications filed a motion for attorneys' fees and costs, pursuant to HRS § 92F-15(d), HRS § 607-9 (1993), and Hawaiʻi Rules of Civil Procedure (HRCP) Rule 54(d) (2000). Oahu Publications sought $66,822.29 in attorneys' fees incurred in the circuit court, $5,000 in attorneys' fees accrued in seeking to collect fees and costs, and $1,177.87 in costs and expenses. The

Governor opposed Oahu Publications' motion, and Oahu Publications filed a reply.

On June 8, 2012, the circuit court issued an order granting Oahu Publications' motion for attorneys' fees and costs. The circuit court concluded that "the fees and costs requested by [Oahu Publications] are reasonable and that, pursuant to Haw. Rev. Stat. § 92F-15, [Oahu Publications], as the complainant prevailed in an action brought under the Uniform Information Practices Act, and this court 'shall assess against the agency reasonable attorney's fees and all other expenses reasonably incurred in the litigation.'" The circuit court further concluded that "given the novel and complex issues presented by this case and the extensive research it entailed, the time expended by the attorneys for [Oahu Publications] was reasonable, as demonstrated by the exhibits attached to [Oahu Publications'] motion and supporting papers." The circuit court awarded Oahu Publications $61,566.47 in attorneys' fees for work performed through the summary judgment hearing, $6,282.72 in attorneys' fees to litigate the fees motion, and $1,777.87 in costs and expenses. The circuit court entered judgment on June 29, 2012, awarding Oahu Publications $69,627.06.

On July 6, 2012, the Governor timely filed a notice of appeal, and the case was docketed in the ICA as CAAP-12-0000625. In his appeal, the Governor did not challenge the circuit court's

conclusions on the underlying disclosure issue.  He only challenged the order granting Oahu Publications' motion for attorneys' fees and costs, and the resulting judgment.

The Governor filed his opening brief on October 9, 2012, Oahu Publications filed its answering brief on November 16, 2012, and the Governor filed his reply brief on December 1, 2012.[3]  Briefly stated, the Governor argued that the circuit court lacked sufficient information to determine the reasonableness of the hours spent by Oahu Publications on this case; the circuit court's fees and costs award was unreasonable; and Oahu Publications should not have been reimbursed for photocopying costs.

On December 27, 2012, the ICA dismissed the appeal sua sponte for lack of jurisdiction.  The ICA explained that the June 29, 2012 judgment "does not satisfy the requirements for an appealable final judgment under Hawaii Revised Statutes (HRS)

---

[3]      Although not all of the documents from appeal CAAP-12-0000625 are included in the record on appeal in this case, the Governor requested that the ICA take judicial notice of those filings pursuant to Hawaiʻi Rules of Evidence (HRE) Rule 201 (1993).  Rule 201(d) provides that "[a] court shall take judicial notice if requested by a party and supplied with the necessary information."  HRE Rule 201(d).  In the past, "[t]his court has validated the practice of taking judicial notice of a court's own records in an interrelated proceeding where the parties are the same."  State v. Akana, 68 Haw. 164, 165, 706 P.2d 1300, 1302 (1985) (citing State v. Wong, 50 Haw. 42, 43, 430 P.2d 330, 332 (1967)).  Here, the filings from appeal CAAP-12-0000625 are included in the ICA's electronic records through the Judiciary Information Management System (JIMS), and the parties in the two appeals are the same.  Although the ICA did not explicitly address the Governor's request, it appears that the ICA was required to take judicial notice of filings made in appeal CAAP-12-0000625, pursuant to HRE Rule 201(d).  Akana, 68 Haw. at 165-66, 706 P.2d at 1302 ("Under Hawaii Rules of Evidence (HRE) 201(d), a court is mandated to take judicial notice if requested by a party and supplied with the necessary information." (emphasis added)).

641-1(a) (1993 & Supp. 2011), Rule 58 of the Hawai'i Rules of Civil Procedure (HRCP) and the holding in Jenkins v. Cades Schutte Fleming & Wright, 76 Hawai'i 115, 119, 869 P.2d 1334, 1338 (1994)." The ICA explained that, although the complaint alleged "four separate and distinct counts against Appellant Abercrombie, the June 29, 2012 judgment does not specifically identify whether the circuit court intends to enter judgment on all four counts in the . . . complaint or merely some of the four counts in the . . . complaint."

The Governor filed a motion for reconsideration, which Oahu Publications joined. On January 10, 2013, the ICA entered an order denying the Governor's motion for reconsideration. Oahu Publications did not file a motion to recover attorneys' fees and costs associated with this first appeal within fourteen days of the ICA's denial of the motion for reconsideration.

After the ICA dismissed the first appeal, the circuit court entered a second amended final judgment on February 8, 2013.[4] On March 1, 2013, the Governor timely filed a second notice of appeal. On March 14, 2013, the Governor filed a stipulation informing the court that the parties had agreed to file their briefs from the first appeal, with updated references

---

[4] In the meantime, the circuit court had granted Oahu Publications' motion to correct a clerical error in the judgment. The circuit court entered an amended judgment on December 12, 2012, reflecting a $600 reduction in the amount awarded to Oahu Publications, from $69,627.06 to $69,027.06.

to the record on appeal.  The parties also agreed on an accelerated briefing schedule.  Specifically, the parties agreed that the Governor's opening brief would be filed no later than seven days after the filing of the record on appeal, Oahu Publications' answering brief no more than five days after the opening brief, and the Governor's reply brief no more than three days after the answering brief.  The ICA entered a corresponding order.

On October 18, 2013, the ICA entered a summary disposition order affirming in part and vacating in part the circuit court's February 8, 2013 second amended final judgment. A majority of the court concluded that the Governor had failed to demonstrate that the circuit court clearly exceeded the bounds of reason in its award of attorneys' fees, but that photocopying costs totaling $564.60 were not adequately substantiated.  The ICA therefore affirmed the second amended judgment as to attorneys' fees, vacated the judgment as to photocopying costs, and remanded the case for further proceedings on the latter issue.

In a dissenting opinion, Judge Ginoza concluded that the record was inadequate for the circuit court to properly exercise its discretion on the issue of attorneys' fees.  Judge Ginoza would have therefore also vacated the attorneys' fees award.

-10-

On November 10, 2013, Oahu Publications filed a request to recover attorneys' fees and costs incurred in the ICA. Oahu Publications' request totaled $26,838.02, which included attorneys fees of $25,300.87 and the associated general excise tax of $1,162.13, anticipated fees of $325 and the associated general excise tax of $15.31, and costs of $34.71. The request included fees and costs associated with both the first and second appeals. Thus, the invoices submitted by Oahu Publications spanned from July 6, 2012, the day the Governor filed a notice of appeal in the first appeal, through October 2013, after the ICA issued its SDO in the second appeal.

The Governor made four arguments in opposition to Oahu Publications' request. First, the Governor argued that any requested fees for work done in the first appeal were untimely. The Governor argued that pursuant to HRAP Rule 39(d)(2), any request for fees accrued in connection with the first appeal "needed to be filed on or before January 24, 201[3]," i.e., no later than 14 days after the ICA issued its order denying the Governor's motion for reconsideration. The Governor argued, therefore, that Oahu Publications could only recover fees accrued after March 1, 2013, when the Governor filed the notice of appeal in the second appeal.

Second, the Governor argued that Oahu Publications could not recover fees for work performed in the circuit court.

-11-

Third, the Governor argued that Oahu Publications' request did not satisfy the requirements of HRAP Rule 39. Finally, the Governor argued that Oahu Publications had not demonstrated that the requested hourly rates were reasonable, and many of the hours reported were "excessive, redundant, or otherwise unnecessary."

In its reply, Oahu Publications argued that it was entitled to recover fees and costs associated with both appeals because HRS § 92F-15(d) "requires assessment of fees and expenses incurred 'in the litigation,' and 'the litigation' here includes both [the Governor's] failed first attempt to appeal . . . and the second[.]" In response to the Governor's argument that Oahu Publications could not recover fees associated with work done in the circuit court, Oahu Publications argued that this work was a "miniscule portion" of its request, and that judicial economy would not be served by mandating "piecemeal requests." Oahu Publications further argued that its request complied with HRAP Rule 39(d)(1). Finally, Oahu Publications argued that its requested hourly rates were reasonable, as were the hours expended.

On January 6, 2014, the ICA entered an order denying Oahu Publications' request for fees. The ICA first stated that "[a]ttorneys' fees and costs related to [the first appeal] are denied with prejudice." The ICA denied without prejudice Oahu Publications' request for fees and costs related to the second

appeal, explaining that the request was "incorrectly calculated in that it requests two different amounts for attorneys' fees," and that it appeared "that some entries are block billed which is prohibited under Hawaii Adventures v. Otaka, 116 Hawaiʻi 465, 173 P.3d 1122 (2007)." Finally, the ICA noted that the "request for costs for photocopying and extra postage failed to specify the purpose for incurring the costs and the date the costs were incurred." The ICA explained that Oahu Publications could file an amended request for attorneys' fees and costs associated with the second appeal within ten days of the filing of the order.

Oahu Publications then filed a motion for reconsideration or clarification. Oahu Publications argued that the ICA misapprehended the requirements of HRS Chapter 92F, "which mandates the assessment of fees and costs reasonably incurred 'in the litigation' which includes both [appeals]." Oahu Publications also asked the ICA for clarification, noting that the ICA did not "provide the reason for denying the request, or the reason it was denied with prejudice[.]"

On January 24, 2014, the ICA entered an order granting Oahu Publications' motion for clarification, but denying its motion for reconsideration. The ICA stated that it denied the request for fees and costs associated with the first appeal because the request was untimely. The ICA noted that under HRAP Rule 39(a), if an appeal is dismissed, "costs shall be taxed

-13-

against the appellant or petitioner upon proper application," and that, pursuant to HRAP Rule 39(d)(2), a request for fees and costs must be filed no later than fourteen days after the time for filing a motion for reconsideration has expired.  The ICA also denied Oahu Publications' request to reconsider its denial of fees and costs associated with the second appeal.

Before the ICA ruled on Oahu Publications' motion for reconsideration or clarification, Oahu Publications filed an amended request for fees.  The amended request included only those fees associated with the second appeal.  Specifically, Oahu Publications sought fees of $1,728.75, for 10.2 hours of work, and general excise tax of $81.45, for a total of $1,810.20.  Oahu Publications submitted its amended request "without prejudice to its arguments, as set forth in the [motion for reconsideration], that [the Governor] must be assessed under [HRS § 92F-15(d)] for all fees and costs incurred 'in the litigation,' which includes both [appeals][.]"

The Governor opposed the amended request, arguing that the number of hours spent preparing the answering brief was overstated, fees associated with requesting an expedited appeal should not be awarded, and the requested hourly rates were not fair reflections of prevailing rates in Honolulu.  In its reply, Oahu Publications argued that the fees award proposed by the Governor was unreasonable, the hours it spent on the appeal were

-14-

reasonable, it was not prohibited from requesting that the case be expedited, and the Governor failed to offer evidence that the requested hourly rates were unreasonable.

On February 24, 2014, the ICA entered an order granting Oahu Publications' amended request for attorneys' fees in its entirety, thereby awarding Oahu Publications $1,810.20 in fees, based on work done during the second appeal. After the ICA entered the judgment on appeal, Oahu Publications timely filed an application for writ of certiorari.

In its application, Oahu Publications presents a single question:

> Are attorneys' fees incurred in an earlier phase of appellate litigation — which the ICA dismissed for lack of a final circuit court judgment, but which did not resolve the action — recoverable by the prevailing complainant under Haw. Rev. Stat. § 92F-15(d) after the ICA rules in its favor on the merits?

### III. Standard of Review

"This court reviews the . . . denial and granting of attorney's fees under the abuse of discretion standard." Ranger Ins. Co. v. Hinshaw, 103 Hawai'i 26, 30, 79 P.3d 119, 123 (2003). "[A]n abuse of discretion occurs where the trial court has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." Id.

### IV. Discussion

Oahu Publications argues that the ICA "ignored the

-15-

plain language" of HRS § 92F-15(d) and "seriously undermined the UIPA's core purpose of encouraging public challenges to government secrecy" in denying Oahu Publications' request for fees incurred during the first appeal.  Specifically, Oahu Publications asks this court to hold that "a request by the complainant for appellate fees and costs incurred in a UIPA case is timely under [HRAP Rule 39] if it is timely filed pursuant to [HRAP Rule 39(d)(2)] after the appellate court has finally determined the merits in the complainant's favor, even if an earlier appeal was dismissed for lack of appellate jurisdiction."

Section 92F-15(d) provides that "if the claimant prevails" in an action brought under the UIPA, the court "shall assess against the agency reasonable attorney's fees and all other expenses reasonably incurred in the litigation."  (Emphasis added).  The fees and costs at issue here relate to one specific part of the litigation, i.e., the Governor's appeal of the circuit court's award of attorneys' fees and costs.  Oahu Publications could not have requested attorneys' fees and costs upon dismissal of the first appeal pursuant to HRS § 92F-15(d) because it was not yet a prevailing party on appeal.  The ICA therefore erred in determining that Oahu Publications' request for fees and costs, which it filed after prevailing in the second appeal, was untimely.

Moreover, although HRAP Rule 39(d)(2) provides that a request for fees and costs "must be filed . . . no later than 14 days after the time for filing a motion for reconsideration has expired or the motion for reconsideration has been decided," the rule further provides that "[a]n untimely request for fees and costs or necessary expenses may be denied."  (Emphasis added).  Thus, even assuming arguendo that Oahu Publications could have filed a request for fees and costs after the first appeal was dismissed, the ICA had the discretion to award fees and costs following resolution of the second appeal.  Failing to do so in the circumstances presented here was an abuse of discretion.

In this regard, the vast majority of the work done in the ICA was performed during the first appeal.  The parties re-submitted the briefs filed in first appeal in the second appeal, with only minor changes.  By not considering the work done during the first appeal, even though it had the discretion to do so, the ICA failed to award Oahu Publications the fees "incurred in the litigation," as it was required to do under HRS § 92F-15(d).

**A.    The ICA erred in determining that Oahu Publications' request for attorneys' fees and costs was untimely**

"Pursuant to the 'American Rule,' each party usually pays its own litigation expenses."  Kemp v. State of Haw. Child Support Enforcement Agency, 111 Hawaiʻi 367, 388, 141 P.3d 1014, 1035 (2006).  As this court has noted, however, "there are several exceptions to this general rule which allow fee-shifting

-17-

such that the losing party pays the fees for the prevailing party, 'when so authorized by statute, rule of court, agreement, stipulation, or precedent.'" Id. (quoting Schefke v. Reliable Collection Agency, Ltd., 96 Hawaiʻi 408, 444, 32 P.3d 52, 88 (2001)). In this case, fees and costs are expressly authorized under the UIPA.

The purposes of the UIPA, HRS Chapter 92F, include promoting the public interest in disclosure; providing accurate, relevant, timely, and complete government records; enhancing governmental accountability through a general policy of access to government records; making government accountable to individuals in the collection, use, and dissemination of information relating to them; and balancing the individual privacy interest and the public access interest, allowing access unless it would constitute a clearly unwarranted invasion of personal privacy. HRS § 92F-2 (1993). The Legislature explained that "it is the policy of this State that the formation and conduct of public policy — the discussions, deliberations, decisions, and action of government agencies — shall be conducted as openly as possible." Id.

In furtherance of these policies, HRS § 92F-15(a) provides that "[a] person aggrieved by a denial of access to a government record may bring an action against the agency at any time within two years after the agency denial to compel

-18-

disclosure." HRS § 92F-15(a). And HRS § 92F-15(d) expressly provides that "[i]f the complainant prevails in an action brought under this section, the court shall assess against the agency reasonable attorney's fees and all other expenses reasonably incurred in the litigation." HRS § 92F-15(d) (emphases added). Thus, pursuant to HRS § 92F-15(d), the court is required to award fees and costs "incurred in the litigation" if the complainant prevails.

Here, it is undisputed that Oahu Publications ultimately prevailed on appeal. Thus, there is no dispute that, pursuant to HRS § 92F-15(d), Oahu Publications was entitled to recover fees and costs incurred on appeal. This case therefore turns on whether the ICA erred in denying Oahu Publications' request for attorneys' fees and costs incurred during the first appeal, even though those fees and costs were incurred "in the litigation." For the reasons set forth below, the ICA erred in denying Oahu Publications request for attorneys' fees and costs incurred during the first appeal.

Although the authority to recover fees and costs in this case arose under HRS § 92F-15(d), the procedure for requesting those fees and costs is generally set forth in HRAP Rule 39. Rule 39(a) provides:

> Except in criminal cases or as otherwise provided by
> law, if an appeal or petition is dismissed, costs
> shall be taxed against the appellant or petitioner
> upon proper application unless otherwise agreed by the
> parties or ordered by the appellate court; if a

judgment is affirmed or a petition denied, costs shall be taxed against the appellant or petitioner unless otherwise ordered; if a judgment is reversed or a petition granted, costs shall be taxed against the appellee or the respondent unless otherwise ordered; if a judgment is affirmed in part and reversed in part, or is vacated, or a petition granted in part and denied in part, the costs shall be allowed only as ordered by the appellate court. . . .

HRAP Rule 39(a).[5]

Rule 39(d)(1) provides:

A party who desires an award of attorney's fees and costs shall request them by submitting an itemized and verified bill of fees and costs, together with a statement of authority for each category of items and, where appropriate, copies of invoices, bills, vouchers, and receipts. . . . Requests for non-indigent attorney's fees and costs allowed by statute or contract shall be submitted in a form that substantially complies with Form 8 in the Appendix of Forms. A failure to provide authority for the award of attorney's fees and costs or necessary expenses will result in denial of that request.

HRAP Rule 39(d)(1).

Subsection (2) further provides:

A request for fees and costs or necessary expenses must be filed with the appellate clerk, with proof of service, no later than 14 days after the time for filing a motion for reconsideration has expired or the motion for reconsideration has been decided. An untimely request for fees and costs or necessary expenses may be denied.

HRAP Rule 39(d)(2).

In the instant case, the relevant portion of the litigation is the Governor's appeal with respect to the circuit court's award of fees and costs. The ICA concluded that Oahu

---

[5]     Rule 39(b) addresses costs against the State of Hawaiʻi, and provides that "if an award of costs against the State is authorized by law, costs shall be awarded in accordance with the provisions of this rule." HRAP Rule 39(b). Here, because HRS § 92F-15(d) authorizes the recovery of "reasonable attorney's fees and all other expenses," HRAP Rule 39(a) applies.

Publications' request for fees and costs incurred during the first appeal was untimely because it was filed more than fourteen days after the Governor's motion for reconsideration in the first appeal was denied. The Governor argues that "nothing would have prevented [Oahu Publications] from filing a request for fees and costs on appeal after the [first appeal] was dismissed[.]" This argument is incorrect. Although Oahu Publications prevailed in the circuit court on the disclosure issue and on its request for fees and costs incurred in the trial court, it was not a prevailing party in the ICA when the court dismissed the first appeal. Thus, Oahu Publications could not have requested either attorneys' fees or costs upon dismissal of the first appeal because it had not yet prevailed in the ICA.

In general, "'the litigant in whose favor judgment is rendered is the prevailing party.'" Wong v. Takeuchi, 88 Hawaiʻi 46, 49, 961 P.2d 611, 614 (1998) (citing Wright, Miller & Kane, Federal Practice & Procedure: Civil 2d § 2667 (1983)). "Thus, a dismissal of the action, whether on the merits or not, generally means that [the] defendant is the prevailing party." Id. (internal quotation marks and citation omitted). "[T]here is no requirement that the judgment in favor of the prevailing party be a ruling on the merits." Id.

In Wong, for example, the plaintiff filed a complaint against three defendants for dissolution of a partnership,

-21-

partnership accounting, and for contribution. Id. at 48, 961 P.2d at 613. The circuit court granted the defendants summary judgment on the defense of laches and the applicable statute of limitations. Id. The circuit court awarded attorneys' fees and costs to each of the defendants. Id. at 48-49, 961 P.2d at 613-14. On appeal, the plaintiff challenged the fees and costs awarded to one of the defendants, arguing that the defendant was not a prevailing party. Id. at 49, 961 P.2d at 614. Specifically, the plaintiff argued that because the circuit court concluded that the claims were untimely, the defendant did not prevail on the merits of her claim, and that she was therefore not a prevailing party for purposes of awarding fees and costs. Id. This court rejected the plaintiff's argument, concluding that there is "no requirement that the judgment in favor of the prevailing party be a ruling on the merits of the claim." Id.

This rule was reaffirmed in Blair v. Ing, 96 Hawaiʻi 327, 31 P.3d 184 (2001). In Blair, the plaintiffs sued for professional negligence and breach of implied contract. Id. at 328, 31 P.3d at 185. The defendant filed a motion to dismiss, which the trial court granted. Id. The defendant then filed a motion for fees and costs. Id. at 329, 31 P.3d at 186. The plaintiffs opposed the motion, arguing, among other things, that the judgment was not on the merits. Id. This court reaffirmed the rule set forth in Wong, holding that "a defendant who

succeeds in obtaining a judgment of dismissal is a prevailing party for the purpose of fees[.]"  Id. at 331, 31 P.3d at 188. In reaching this conclusion, the Blair court explained that "requiring a defendant who would otherwise prevail on a motion to dismiss, to litigate a claim through trial in order to prevail 'on the merits' would frustrate the modern goals of judicial economy and the just, speedy, and inexpensive determination of every action."  Id.

This court has applied the same rule to a situation where a plaintiff has voluntarily dismissed an action.  See Ranger Ins. Co. v. Hinshaw, 103 Hawaiʻi 26, 79 P.3d 119 (2003). In Ranger, an insurance company filed a complaint seeking, among other things, a declaration that it had no duty to indemnify a skydiving business, following an accident involving one of the business's patrons.  Id. at 30, 79 P.3d at 123.  The parties eventually entered into a settlement agreement, and Ranger moved for leave to dismiss its declaratory judgment action.  Id.  The circuit court dismissed the complaint for declaratory relief with prejudice, and the business filed a motion of attorneys' fees and costs.  Id.

On appeal, Ranger argued that there was no prevailing party because there was no judgment on the merits.  Id. at 31, 79 P.3d at 124.  Citing Wong and Blair, this court held that "dismissal of Ranger's action, albeit voluntary, is sufficient to

deem a defendant to be the prevailing party[.]"  Id.

Here, the ICA dismissed the first appeal sua sponte, solely because of a flaw in the circuit court's judgment. Specifically, the ICA explained that, although the complaint alleged four counts against the Governor, the June 29, 2012 judgment did not specifically identify whether the circuit court intended to enter judgment as to all four counts.  The Governor filed a motion for reconsideration, which Oahu Publications joined.  In these circumstances, it cannot be said that Oahu Publications prevailed following the first appeal.

Unlike in Wong, where the case was decided on the defense of laches and the applicable statute of limitations, the ICA's dismissal of the first appeal did not finally resolve the instant case.  The Governor was free to file a second appeal once the circuit court corrected the judgment, so that he could challenge the circuit court's award of fees and costs to Oahu Publications.  Indeed, this is exactly what happened.  Unlike in Blair, where the defendant affirmatively moved to dismiss the complaint, Oahu Publications did not seek dismissal of the first appeal.  In fact, as noted above, Oahu Publications joined the Governor's motion for reconsideration of the dismissal.  Finally, unlike in Ranger, where the plaintiff moved for leave to dismiss its complaint and the circuit court dismissed the complaint with prejudice, the Governor did not move to dismiss the first appeal,

-24-

nor did the ICA dismiss the first appeal with prejudice.  In other words, the Governor was free to file another appeal upon entry of an amended judgment and that is exactly what he did. Oahu Publications was therefore not a prevailing party and could not have requested fees under HRS § 92F-15(d) following the dismissal of the first appeal.

Our conclusion in this regard is consistent with a line of cases concluding that a "material alteration of the legal relationship of the parties [is] necessary to permit an award of attorney's fees."  Buckhannon Bd. & Care Home v. W. Va. Dep't Health & Human Res., 532 U.S. 598, 604 (2001); see also Cadkin v. Loose, 569 F.3d 1142, 1148 (9th Cir. 2009) ("The key inquiry is whether some court action has created a material alteration of the legal relationship of the parties.") (internal quotation marks and citation omitted).  In Buckhannon, the United States Supreme Court observed that a "'prevailing party' is one who has been awarded some relief by the court[.]"  532 U.S. at 603. Courts have therefore concluded that a dismissal without prejudice does not alter the legal relationship of the parties "because the defendant remains subject to risk of re-filing." Oscar v. Alaska Dept. of Educ. & Early Dev., 541 F.3d 978, 981 (9th Cir. 2008).  These cases therefore also support our conclusion that Oahu Publications had not prevailed upon dismissal of the first appeal because there was no "material

alteration of the legal relationship of the parties," and it remained at risk that the Governor would file another appeal upon entry of an amended judgment.

Even assuming Oahu Publications had filed such a request upon dismissal of the first appeal, the ICA could not have awarded Oahu Publications the substantial fees incurred in reviewing the Governor's briefs and preparing its own brief because there had been no determination that Oahu Publications would ultimately prevail on appeal.  Put another way, the ICA could not have awarded Oahu Publications the $19,000 in fees generated during the first appeal unless and until Oahu Publications prevailed in that court.  Because Oahu Publications could not have obtained an award of attorneys' fees upon dismissal of the first appeal, the ICA erred in concluding that it was required to seek them at that time.

With respect to costs, as noted above, HRAP Rule 39(a) provides that "[e]xcept in criminal cases or as otherwise provided by law, if an appeal or petition is dismissed, costs shall be taxed against the appellant or petitioner upon proper application unless otherwise agreed by the parties or ordered by the appellate court[.]"  HRAP Rule 39(a) (emphasis added).  Costs, in this case, are "otherwise provided by law," because HRS § 92F-15(d) expressly provides that if the complainant prevails, the court shall assess "reasonable attorney's fees and all other

expenses reasonably incurred in the litigation." (Emphasis added). Thus, like with attorneys' fees, Oahu Publications was entitled to recover costs pursuant to HRS § 92F-15(d) once it prevailed in the ICA. As noted above, because Oahu Publications was not a prevailing party upon dismissal of the first appeal, it was not required to request costs until after the second appeal was decided.

In sum, when the ICA dismissed the first appeal, it did so sua sponte, without prejudice to the Governor filing a second appeal after the circuit court filed an amended judgment. Thus, it was not possible to determine then who the prevailing party would be on appeal, and it would have been futile for Oahu Publications to file a motion for attorneys' fees and costs at that time. It was not until the second appeal was decided that such a determination could be made. While HRAP Rule 39(d)(2) properly requires parties to act in a timely manner, its purposes are not served by requiring parties to take actions that are futile. Yet that is effectively what the ICA's ruling required here.

**B.    Even assuming arguendo that Oahu Publications could have filed a request for fees and costs following the first appeal, the ICA should have exercised its discretion to consider the request filed after the second appeal was decided**

As noted above, the ICA concluded that Oahu Publications was required to request fees incurred during the

-27-

first appeal within fourteen days after the ICA denied the Governor's motion for reconsideration.  Even assuming that Oahu Publications could have filed a request for fees following the dismissal of the first appeal, the ICA had discretion to consider the request filed after the second appeal was decided.

Although the first sentence of HRAP Rule 39(d)(2) provides that a request for fees and costs "must be filed" no later than fourteen days after the time for filing a motion for reconsideration expires or the motion is decided, the rule goes on to provide that the appellate court "may" nevertheless consider an untimely request.  Thus, this court has observed that the ICA is not required to deny an untimely request.  Tortorello v. Tortorello, 113 Hawaiʻi 432, 442, 153 P.3d 1117, 1127 (2007).

In Tortorello, the ICA granted a husband's request for costs in a protective order case, even though the request was filed four days after the deadline for submission under HRAP Rule 39(d)(2).  Id.  The wife argued that the ICA erred in awarding costs because the request was untimely.  Id.  This court concluded that the "ICA was not required to deny Husband's request for costs due to untimeliness," because "HRAP Rule 39(d)(2) expressly indicates that an untimely request for costs 'may be denied.'"  Id. (emphasis in original).[6]  Thus, the ICA

_____

[6]     In reaching this conclusion, this court also noted that "[a]lthough the appellate courts are not required to deny a request due to untimeliness, the appellate courts have exercised that discretion in denying
(continued...)

-28-

has discretion to consider an untimely request under HRAP Rule 39(d)(2).  Id.

In the circumstances of this case, the ICA abused its discretion in refusing to consider Oahu Publications' request for attorneys' fees and costs following the resolution of the second appeal.  Specifically, the parties had completely briefed the case during the first appeal, before the ICA dismissed that appeal because of an error in the circuit court's judgment.  By the time the ICA dismissed the appeal, Oahu Publications had spent significant time reviewing the Governor's opening and reply briefs, and preparing its answering brief.  Specifically, the record indicates that Oahu Publications spent more than sixty-eight hours directly related to the briefing of the first appeal, resulting in fees in excess of $19,000.[7]

Moreover, the time spent by Oahu Publications on the second appeal did not accurately reflect the work it had performed in the ICA.  After the Governor filed the second

---

[6](...continued)
outright an untimely request for fees and/or costs."  Id. n.9.  This court therefore cautioned "counsel to comply with HRAP Rule 39(d)(2)'s mandate that such requests for fees and/or costs be filed no later than fourteen days after the time for filing a motion for reconsideration has expired or the motion for reconsideration has been decided."  Id.

[7]      On the invoices associated with the work performed during the first appeal, it appears that counsel gave Oahu Publications a ten percent "courtesy discount" on the resulting fees.  Even taking such a discount into account, however, Oahu Publications' fees exceeded $17,000.  In its memorandum in support of its request for fees, Oahu Publications stated that it "provided a total of $5,583.88 in courtesy discounts," "primarily related to work undertaken as a result of Governor Abercrombie's failed first appeal[.]"

appeal, the parties agreed that they would each re-file the briefs from the first appeal, with updated references to the record on appeal.  As a result, the vast majority of Oahu Publications' work done in the ICA was undertaken during the course of the first appeal, rather than the second.  Indeed, Oahu Publications requested fees totaling only $1,728.75 for 10.2 hours of work performed during the second appeal.[8]

By denying Oahu Publications' request for fees associated with the first appeal, the ICA essentially ignored more than sixty hours of work and fees in excess of $19,000 incurred during the first appeal, all of which was used by Oahu Publications to prevail on the merits during the second appeal. The ICA offered no explanation why it refused to exercise its discretion to consider Oahu Publications' request for fees for services that were performed during the first appeal and used to obtain the ultimately successful outcome on the merits.  The ICA's denial of any fees incurred during the first appeal is at odds with the express language of HRS § 92F-15(d), which provides that "the court shall assess against the agency reasonable attorney's fees and all other expenses reasonably incurred in the

---

[8]     This total reflects a fifty percent "courtesy discount."  The ICA's final award of fees for the second appeal, $1,810.20, also included a general excise tax of $81.45.

litigation."[9]  (Emphases added).  In these circumstances, the ICA abused its discretion in denying Oahu Publications' request for fees and costs incurred during the first appeal.[10]

## V.  Conclusion

For the foregoing reasons, the ICA's January 6, 2014, and January 24, 2014 orders are vacated in part, and the ICA's March 3, 2014 judgment on appeal is vacated to the extent it reflects a denial of Oahu Publications' request for appellate

---

[9]     Oahu Publications argues that to the extent there is a conflict between HRAP Rule 39 and HRS § 92F-15(d), the statute controls.  This court has explained that "where a statute and a rule merely overlap, but do not irreconcilably conflict, effect should be given to both if possible."  Cnty. of Haw. v. C & J Coupe Family Ltd. P'ship, 120 Hawaiʻi 400, 405, 208 P.3d 713, 718 (2009).  Here, there is no irreconcilable conflict between HRAP Rule 39 and HRS § 92F-15(d).  Section 92F-15(d) provided Oahu Publications with the authority to seek fees and costs in the ICA, and HRAP Rule 39 set forth the procedure for requesting those fees and costs.  There is nothing inherently inconsistent in those two provisions, provided the court reasonably exercises its discretion under the rule.  In the circumstances of the instant case, the ICA abused its discretion under the rule in denying Oahu Publications its fees and costs for services performed in connection with the first appeal.  There may be circumstances where a denial of fees and costs as untimely in a HRS § 92F-15(d) case would be appropriate, but this case does not present such circumstances.  For example, if Oahu Publications had filed a request for fees and costs more than 14 days after the second appeal had become final, the ICA could have properly denied such a request as untimely.

[10]     Of course, this is not to say that Oahu Publications should receive the fees and costs requested in connection with the first appeal in their entirety.  The reasonableness of the request in connection with the first appeal should be decided by the ICA in the first instance on remand.

fees and costs.  The matter is remanded to the ICA for

proceedings consistent with this opinion.

Diane D. Hastert,
Robert H. Thomas,
Mark M. Murakami, and
Christopher J.I. Leong
for petitioner

Charleen M. Aina
for respondent

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ R. Mark Browning

/s/ Gary W.B. Chang

/s/ Jeannette H. Castagnetti

