**Electronically Filed
Supreme Court
SCWC-17-0000714
14-AUG-2025
09:17 AM
Dkt. 31 OP**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

DAVID COWAN and NATHALIE COWAN; and PAUOA BEACH 8 LLC,
a Hawai'i Limited Liability Company,
Petitioners/Plaintiffs-Appellants/Cross-Appellees,

and

UMANG P. GUPTA and RUTH M. GUPTA, as Trustees of the Umang and
Ruth Gupta Trust under Trust Agreement dated January 18, 2000;
Respondents/Plaintiffs-Appellants/Cross-Appellees,

and

ROARING LION, LLC, a Montana Limited Liability Company;
ROGER A. GREENWALD and JENNIFER A. HURWITZ,
Respondents/Plaintiffs-Appellees/Cross-Appellees,

vs.

EXCLUSIVE RESORTS PBL1, LLC,
a Delaware Limited Liability Company;
Respondent/Defendant-Appellee/Cross-Appellant,

and

PAUOA BAY PROPERTIES LLC, a Delaware Limited Liability Company;
WHITE SAND BEACH LIMITED PARTNERSHIP, a Delaware Limited
Partnership; PAUOA BEACH REALTY LLC, a Hawai'i Limited Liability
Company; EXCLUSIVE RESORTS PBL3, LLC, a Delaware Limited
Liability Company;
Respondents/Defendants-Appellees/Cross-Appellees.

SCWC-17-0000714

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-17-0000714; CASE NO. 3CC041000332)

AUGUST 14, 2025

RECKTENWALD, C.J., McKENNA, EDDINS, AND DEVENS, JJ.,
AND CIRCUIT JUDGE JOHNSON, IN PLACE OF GINOZA, J., RECUSED

OPINION OF THE COURT BY DEVENS, J.

## I.  INTRODUCTION

This case involves the use of a residential lot in the Pauoa Beach Subdivision (subdivision) located in the Mauna Lani Resort master development.  Petitioners David Cowan, Nathalie Cowan, and Pauoa Beach 8 LLC (Plaintiffs) are residential owners of units located in the makai subdivision (ocean-facing).  Respondent Exclusive Resorts PBL1 (PBL1 or Defendant) owns a residential lot (Lot B) in the mauka subdivision (upland-facing), where it developed four duplexes consisting of eight condominium units.

PBL1's parent company, non-party Exclusive Resorts, LLC (ER), operates a membership program (described as a luxury destination club) which allows ER members to stay at certain properties, including Lot B, in exchange for the payment of annual dues.  Plaintiffs' primary contention is that PBL1 is engaging in a "commercial use" of its Pauoa Beach residential property in violation of the Mauna Lani Resort Declaration of

2

Covenants and Restrictions (Resort Declaration) and the Pauoa Beach Declaration of Covenants, Conditions, Restrictions, and Easements (collectively, the Project Documents), which allows owners to operate short-term rentals, but restricts the "commercial use" of the properties.

This is the second appeal in this matter. In the first appeal, the Intermediate Court of Appeals (ICA) vacated the Circuit Court of the Third Circuit's (circuit court) granting of summary judgment regarding PBL1's use of Lot B, and remanded the case to the circuit court for a factual determination on PBL1's actual use of Lot B.[1] In the second appeal, the ICA concluded that based on the actual use of Lot B, PBL1's use was not in violation of the Project Documents. Concluding that PBL1 was the prevailing party, the ICA subsequently awarded PBL1 attorney fees and costs based on Hawai'i Revised Statutes (HRS) § 607-14 and Hawai'i Rules of Appellate Procedure (HRAP) Rule 39, respectively.

Upon review of the record, we conclude that the ICA did not err in its determination that PBL1's use of Lot B did not violate the Project Documents and did not abuse its discretion

---

[1]    The Honorable Greg K. Nakamura presided in this case.

3

in awarding costs to PBL1.

However, we reverse the ICA's award of attorney fees to PBL1. PBL1 sought attorney fees pursuant to HRS § 607-14, which provides for an award of attorney fees "in all actions in the nature of assumpsit and in all actions on a promissory note or other contract in writing that provides for an attorney's fee[.]" HRS § 607-14 (2016).

In this case, the parties' Resort Declaration is a contract in writing containing a fee provision that solely provides fees to prevailing plaintiffs who bring actions to enforce the subdivision's restrictive covenants, and not to parties, such as PBL1, who successfully defend such actions. Under these facts and circumstances, the Resort Declaration is an enforceable contract in writing that contains a fee provision. We therefore reverse the ICA's award of attorney fees to PBL1.

## II. BACKGROUND

### A. Proceedings in the First Appeal

Plaintiffs filed a complaint in 2004 in which they alleged, among other things, that PBL1's use of Lot B violated the subdivision's Project Documents. In 2003, Pauoa Bay Properties, LLC sold Lot B to ER, PBL1's parent company, and, in 2004, Lot B was transferred to PBL1. The nature of ER's operations is at the center of this dispute. ER runs a membership program that

4

operates as a vacation club where members pay annual dues to stay at properties owned by ER, including Lot B in the Pauoa Beach subdivision.  Plaintiffs claimed that ER's use of Lot B was "in breach and violation" of the Project Documents' restriction on commercial use, and that PBL1 was liable for damages.  Plaintiffs requested injunctive relief, compensatory damages, punitive and exemplary damages, and attorney fees and costs.

Pauoa Bay Properties, LLC,[2] joined by PBL1, filed a motion for partial summary judgment, which the circuit court granted ruling that as a matter of law, PBL1's use of Lot B did not violate any residential use restrictions and there were no genuine issues of material fact.

Plaintiffs appealed.  The ICA issued a memorandum opinion vacating in part the circuit court's granting of partial summary judgment insofar as the circuit court concluded that there were no genuine issues of material fact as to whether PBL1's use of Lot B violated the restrictive covenants.  Roaring Lion, LLC v. Exclusive Resorts PBL 1, LLC, No. CAAP-11-0001072, 2013 WL 1759002, at *1 (Haw. App. Apr. 24, 2013) (mem. op.).

Relevant here, the ICA interpreted the terms and

---

[2]     Pauoa Bay Properties, LLC is no longer a party to this action.

5

restrictive covenants in the Project Documents, specifically addressing the Project Document's restriction on commercial use, and concluded as a matter of law that "any use rising to the level of maintaining a 'gainful occupation, profession or trade' constitutes a commercial use and cannot be deemed 'residential' within the meaning of the Project Documents." Id. at *4-5. However, the ICA determined that there was a genuine issue of material fact as to whether the impact of PBL1's actual use of Lot B relating to rental activities rose to a level of "gainful occupation, profession or trade." Id. at *5-6. Concluding that summary judgment was not appropriate, the ICA remanded the case to the circuit court to resolve the factual issue of whether PBL1's actual use of Lot B violated the Project Documents. Id. at *5-6, *11.

Neither Plaintiffs nor PBL1 filed an application for writ of certiorari.

B.    **Proceedings on Remand and Second Appeal to the ICA**

On remand, the circuit court reinterpreted the terms of the Project Documents and, based on its reinterpretation, ruled that PBL1 was a "commercial owner" of "commercial apartments" and was therefore in violation of the Project Documents. However, the circuit court further considered testimony and evidence presented as to PBL1's actual use of Lot B, and based on PBL1's

6

day-to-day operations, the circuit court found that PBL1's actual use did not rise to a level of commercial use or violate the Project Documents.  The court subsequently denied Plaintiffs' request for an injunction to prohibit PBL1 from continuing its operations.

Both parties appealed.  The ICA reversed in part and affirmed in the part the circuit court's Judgment on Remand (remand judgment).  Cowan v. Pauoa Bay Properties LLC, No. CAAP-17-0000714, 2023 WL 569373, at *1 (Haw. App. Jan. 27, 2023) (mem. op.).

The ICA concluded that the circuit court erred in reinterpreting the Project Documents on remand, citing to the law of the case doctrine.  Cowan, 2023 WL 569373, at *5-9 (citing Hussey v. Say, 139 Hawai'i 181, 185, 384 P.3d 1282, 1286 (2016)).  The ICA further reviewed the circuit court's findings that PBL1's actual use was not commercial; and determining that these findings were dispositive, the ICA concluded that PBL1 did not violate the Project Documents' restriction on commercial activity.  Id. at *10-15.  Concluding that this action was in the nature of assumpsit, the ICA awarded attorney fees to PBL1, the prevailing party, pursuant to HRS § 607-14, and awarded costs to PBL1 pursuant to HRAP Rule 39.

We accepted Plaintiffs' certiorari application which

asserts that: (1) the ICA erred in reversing the circuit court's conclusion of law that PBL1's use of Lot B was commercial under the Project Documents; and (2) the ICA abused its discretion in awarding PBL1 attorney fees and costs under HRS § 607-14.

### III.  STANDARDS OF REVIEW

**A.  Findings of Fact and Conclusions of Law**

This court reviews findings of fact (FOFs) under the clearly erroneous standard and conclusions of law (COLs) de novo.  Amfac, Inc. v. Waikiki Beachcomber Inv. Co., 74 Haw. 85, 116-19, 839 P.2d 10, 27-29 (1992).

> A FOF is clearly erroneous when, despite evidence to support the finding, the appellate court is left with the definite and firm conviction in reviewing the entire evidence that a mistake has been committed.  Where there is substantial evidence, which is credible evidence of sufficient quantity and probative value to justify a reasonable person in reaching conclusions that support the FOFs, the FOFs cannot be set aside.  Moreover, an appellate court will not pass upon issues dependent upon credibility of witnesses and the weight of the evidence; this is the province of the trial judge.

Id. at 116-17, 839 P.2d at 27-28 (cleaned up).

> A COL is not binding upon an appellate court and is freely reviewable for its correctness.  A COL that is supported by the trial court's FOFs and that reflects an application of the correct rule of law will not be overturned.  However, a COL that presents mixed questions of fact and law is reviewed under the clearly erroneous standard because the court's conclusions are dependent upon the facts and circumstances of each individual case.

Id. at 119, 839 P.2d at 28-29 (cleaned up).

**B.  Attorney Fees and Costs**

"This court reviews an ICA order granting or denying

8

attorney's fees and costs under the abuse of discretion standard." Deutsche Bank Nat'l Tr. Co. v. Kozma, 140 Hawai'i 494, 497, 403 P.3d 271, 274 (2017) (citing Oahu Publ'ns, Inc. v. Abercrombie, 134 Hawai'i 16, 22, 332 P.3d 159, 165 (2014)). "An abuse of discretion occurs where the court has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." Id. at 498, 403 P.3d at 275 (quoting Oahu Publ'ns, 134 Hawai'i at 22, 332 P.3d at 165) (brackets and ellipses omitted).

## IV. DISCUSSION

### A. Law of the Case

Plaintiffs contend the ICA erred in reversing the circuit court based on the law of the case doctrine insofar as the circuit court concluded that PBL1's use of Lot B was commercial in nature. Upon review of the record, we agree with the ICA's analysis and reasoning.

Here, the ICA concluded that on remand, the circuit court erred in reinterpreting the Project Documents. The ICA reasoned:

> [t]he Circuit Court's reasoning that PBL1 was a commercial owner of commercial apartments and therefore, the transient rental of the Lot B units is a "commercial use" under the Project Documents was already rejected by this Court in [the prior appeal]. We remanded the case for development of an evidentiary record as to the actual use of the Lot B units, not for reargument on the meaning of the Project Documents. Pursuant to the doctrine of law of the case, this court's earlier ruling should not have been disturbed.

9

> Hussey, 139 Hawai'i at 185, 384 P.3d at 1286. Even considering the entirety of the record of proceeding which followed remand, we see no cogent reason to reconsider this Court's construction of the restrictive covenants in [the prior appeal], which concluded that the status of an owner as a "commercial owner" of "commercial apartments" pertained primarily to voting power and, while a relevant consideration, that status was not determinative of the "use" of the property.
>
> . . . .
>
> Thus, the Circuit Court erred when it failed to apply the law-of-the-case set forth in [the prior appeal], and concluded that PBL1's use of Lot B was a "commercial use" based on the definitions stated in the Project Documents, without regard to the actual use of the Lot B units.

Cowan, 2023 WL 569373, at *9.

As the ICA's reasoning is consistent with our caselaw, we affirm.[3] See Hussey, 139 Hawai'i at 185, 384 P.3d at 1286 ("The law of the case doctrine holds that a determination of a question of law made by an appellate court in the course of an action becomes the law of the case and may not be disputed by reopening of the question at a later stage of the litigation.") (citation and quotations omitted); see also In re Hawai'i Elec. Light Co., 149 Hawai'i 239, 241, 487 P.3d 708, 710 (2021) ("On

---

[3]     To the extent Plaintiffs argue that the law of the case doctrine applies only to conclusions of law, this argument is not before us. See Ditto v. McCurdy, 98 Hawai'i 123, 129, 44 P.3d 274, 280 (2002). In the first appeal, the ICA addressed the legal effect of the project documents and concluded as a matter of law that commercial use is any use that rises to "gainful occupation, profession or trade." Roaring Lion, 2013 WL 1759002, at *5-6. Thus, the law of the case as determined by the ICA in the first appeal was based on a conclusion of law. See Balogh v. Balogh, 134 Hawai'i 29, 37, 332 P.3d 631, 639 (2014) ("[T]he construction and legal effect to be given a contract is a question of law freely reviewable by an appellate court.") (citation omitted).

remand, a trial court must closely adhere to the true intent and meaning of the appellate court's mandate.").

## B.   Attorney Fees

Plaintiffs also assert that the ICA abused its discretion in awarding attorney fees to PBL1 as the Resort Declaration provides for the award of attorney fees only to prevailing parties who bring actions seeking to enforce the restrictions in the Mauna Lani Project Documents, but not to parties defending such actions.   In response, PBL1 contends that it is entitled to attorney fees under HRS § 607-14 because this is an action in nature of assumpsit, and PBL1 is the prevailing party.

HRS § 607-14 specifically provides that parties are entitled to fees if there is a "contract in writing that provides for an attorney's fee[.]"  HRS § 607-14.  Therefore, based on the plain language of the statute and consistent with our caselaw, we hold that PBL1 was not entitled to attorney fees under the parties' Resort Declaration.

"The 'American Rule' provides that each party is normally responsible for paying his or her attorneys' fees." Gurrobat v. HTH Corp., 135 Hawai'i 128, 131, 346 P.3d 197, 200 (2015) (citation omitted).  "Attorneys' fees are only, therefore, 'chargeable against the opposing party when so authorized by statute, rule of court, agreement, stipulation, or precedent.'"

11

Id. (quoting Lee v. Aiu, 85 Hawai'i 19, 32, 936 P.2d 655, 668 (1997)).

The question Plaintiffs present is whether an assumpsit action[4] allows for attorney fees even if a contract, such as the Resort Declaration, does not provide for attorney fees to one of the parties. Under the facts and circumstances of this case, which involves a planned community association's governing documents, we hold that even if a case sounds in assumpsit, where there is a specific contractual provision or language providing for attorney fees, the contract should be followed in awarding fees.

The "fundamental starting point for statutory interpretation is the language of the statute itself." Panado v. Bd. of Trs., Emps.' Ret. Sys., 134 Hawai'i 1, 13, 332 P.3d 144, 156 (2014) (citations omitted). "[W]here the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning." Id. "[I]mplicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in

---

[4] "[A]ssumpsit is a common law form of action which allows for the recovery of damages for non-performance of a contract, either express or implied, written or verbal, as well as quasi contractual obligations." TSA Int'l Ltd. v. Shimizu Corp., 92 Hawai'i 243, 264, 990 P.2d 713, 734 (1999) (citation and quotations omitted) (emphasis original).

the statute itself."  Id. at 154, 332 P.3d at 11 (citations

omitted).  "Only when there is an ambiguity in a statute are we

to resort to other methods of statutory interpretation."  Barker

v. Young, 153 Hawai'i 144, 149, 528 P.3d 217, 222 (2023).

HRS § 607-14 provides, in relevant part,

> In all the courts, in all actions in the nature of
> assumpsit and in all actions on a promissory note or other
> contract in writing that provides for an attorney's fee,
> there shall be taxed as attorneys' fees, to be paid by the
> losing party and to be included in the sum for which
> execution may issue, a fee that the court determines to be
> reasonable; provided that the attorney representing the
> prevailing party shall submit to the court an affidavit
> stating the amount of time the attorney spent on the action
> and the amount of time the attorney is likely to spend to
> obtain a final written judgment, or, if the fee is not
> based on an hourly rate, the amount of the agreed upon fee.
> The court shall then tax attorneys' fees, which the court
> determines to be reasonable, to be paid by the losing
> party; provided that this amount shall not exceed twenty-
> five per cent of the judgment.

HRS § 607-14 (emphasis added).

Based on the plain language of HRS § 607-14, parties are

entitled to attorney fees in assumpsit actions and actions based

on either "a promissory note or other contract in writing that

provides for an attorney's fee."  HRS § 607-14 also provides

that parties may contract for a specific rate not exceeding 25%

of the judgment; however, planned community associations and its

members who bring enforcement actions are not subject to the 25%

13

cap on attorney fees.  HRS § 607-14.[5]

While this court has not directly addressed HRS § 607-14 and the entitlement to fees in an assumpsit action wherein the parties have also contracted to an attorney fee provision, we have previously held that "[w]here the case sounds in 'assumpsit' but there is a specific contractual provision for attorney's fees, that provision . . . should be followed in awarding attorney's fees."  Gerner v. Trs. Under the Will and Est. of Campbell, 72 Haw. 4, 7, 803 P.2d 199, 201 (1990).

In Gerner, this court addressed a one-way fee shifting licensing agreement, which provided that in any case where the licensor was "made a party to any litigation commenced by or against the Licensee . . . the Licensee shall pay to the Licensor all expenses incurred in connection therewith, including a reasonable attorney's fee and court costs."  Id. at 7, 803 P.2d at 201.

At issue in Gerner was whether this court should apply the

---

[5]     HRS § 607-14 also provides, in relevant part,

>    Nothing in this section shall limit the recovery of
>    reasonable attorneys' fees and costs by a planned community
>    association and its members in actions for the collection
>    of delinquent assessments, the foreclosure of any lien, or
>    the enforcement of any provision of the association's
>    governing documents, or affect any right of a prevailing
>    party to recover attorneys' fees in excess of twenty-five
>    per cent of the judgment pursuant to any statute that
>    specifically provides that a prevailing party may recover
>    all of its reasonable attorneys' fees.

14

fee schedule as set forth in HRS § 607-14, which authorized attorney fees for actions in nature of assumpsit, or HRS § 607-17, which governed the award of attorney fees pursuant to contracts in writing.  Id. at 6-7, 803 P.2d at 200-01.

Gerner was issued prior to the 1993 amendments to HRS § 607-14, which integrated the "contract in writing" language from HRS § 607-17 into HRS § 607-14, which provided for fees in assumpsit actions.  HRS § 607-14, as amended in 1993, retained substantially the same language as the repealed HRS § 607-17. See HRS § 607-14 (1993); HRS § 607-17 (1985); see also Eastman v. McGowan, 86 Hawai'i 21, 30-31, 946 P.2d 1317, 1326-27 (1997) (discussing the legislative history of the amended HRS § 607-14).

Gerner decided that because there was a "specific contractual provision for attorney's fees, that provision, under HRS § 607-17, should be followed in awarding attorney's fees." 72 Haw. at 7, 803 P.2d at 201.  Thus, even though "the case sound[ed] in assumpsit," this court remanded the case to the circuit court "to determine reasonable attorneys' fees to be awarded to the appellees in accordance with the provisions of the license agreement and of HRS § 607-17." Id. (quotations omitted).

In a subsequent case involving an arbitration agreement,

15

Kona Village Realty, Inc. v. Sunstone Realty Partners, XIV, LLC, we reviewed HRS § 607-14 to determine whether the parties' contract providing for attorney fees was binding. 123 Hawai'i 476, 477, 236 P.3d 456, 457 (2010). Holding that the parties' agreement expressly "authorize[d] the arbitrator to award attorneys' fees in such amounts as the majority of the arbitrators shall determine at the time of the award," we affirmed the arbitrator's attorney fee award. Id. (quotations omitted).

Article V Section 3(d) of the Resort Declaration specifically provides that "[i]f any person or entity brings an action for the enforcement of the Mauna Lani Resort Restrictions, such person or entity shall be entitled to reasonable attorneys' fees and costs if he or it prevails in such action." (emphasis added).

"Generally, the declaration and bylaws of a condominium serve as a contract between the condominium owners and the association, establishing the rules governing the condominium." Harrison v. Casa De Emdeko, Inc., 142 Hawai'i 218, 226, 418 P.3d 559, 567 (2018) (citations omitted); see also Fong v. Hashimoto, 92 Hawai'i 568, 574, 994 P.2d 500, 506 (2000) ("A restrictive covenant is a contract dependent upon reciprocal or mutual burdens and benefits."). In interpreting a contract, "it is

16

fundamental that terms of a contract should be interpreted according to their plain, ordinary and accepted use in common speech, unless the contract indicates a different meaning." Amfac, 74 Haw. at 108, 839 P.2d at 24 (quotations and citations omitted).

The plain language of the Resort Declaration clearly sets forth that in the event of an enforcement action, only the party who "brings an action" and prevails is entitled to an attorney fee award. Neither PBL1 nor Plaintiffs assert that the Resort Declaration's fee provision is ambiguous, vague, or "susceptible to more than one meaning." See Hawaiian Ass'n of Seventh-Day Adventists v. Wong, 130 Hawai'i 36, 45, 305 P.3d 452, 461 (2013). Accordingly, as PBL1 did not bring this enforcement action, it is not entitled to attorney fees pursuant to the plain language of the Resort Declaration.[6]

To hold otherwise in this case would infringe on the parties' right to contract. See City Express, Inc. v. Express

---

[6] To the ICA, PBL1 argued that pursuant to the ICA's decision in Cooper v. Schmidt, the Resort Declaration's unilateral fee provision should be interpreted to provide fees to PBL1 as the defendant in an enforcement action. 4 Haw. App. 115, 121, 661 P.2d 724, 728 (App. 1983). As the ICA awarded attorney fees based on the action being in the nature of assumpsit, the ICA did not address this argument when it granted PBL1's motion for attorney fees and costs. To the extent that Cooper v. Schmidt is inconsistent with this opinion and this court's opinions in Gerner and Kona Village Realty, it is hereby overruled. See Kona Vill. Realty, 123 Hawai'i at 478, 236 P.3d at 458; Gerner, 72 Haw. at 7, 803 P.2d at 201.

17

Partners, 87 Hawai'i 466, 470 n.4, 959 P.2d 836, 840 n.4 (1998) ("In general, parties may contract as they wish, and courts will enforce their agreements without passing on their substance[.]") (quoting Restatement of Contracts (Second) Introductory Note to Chapter 8 (1979)); see also Kona Vill. Realty, 123 Hawai'i at 478, 236 P.3d at 458 (discussing the constitutionally protected right of freedom to contract).

The parties in this case do not contend that the Resort Declaration's fee provision violates public policy. See HRS § 1-5 (2009) ("[I]ndividuals may, in all cases in which it is not expressly or impliedly prohibited, renounce what the law has established in their favor, when such renunciation does not affect the rights of others, and is not contrary to the public good."). Nor do the parties argue that the Resort Declaration or the governing Project Documents are unconscionable or contracts of adhesion.

We therefore conclude that under the facts and circumstances of this case, PBL1 was not entitled to attorney fees based on the parties' enforceable contract in writing. The ICA's award of attorney fees pursuant to HRS § 607-14 is hereby reversed.

## C. Costs on Appeal

As the ICA awarded appellate costs to PBL1 pursuant to HRAP

18

Rule 39, we consider the award of costs separately from the award of attorney fees. See Azer v. Myers, 71 Haw. 506, 512, 795 P.2d 853, 857 (1990).

Plaintiffs do not dispute that PBL1 was the prevailing party on appeal or that HRAP Rule 39 grants the ICA the authority to award costs on appeal. We therefore conclude the ICA did not abuse its discretion in granting PBL1's request. See HRAP Rule 39(a) (eff. 2016); see also Jou v. Argonaut Ins. Co., 133 Hawai'i 471, 477, 331 P.3d 449, 455 (2014) ("The intent of [HRAP Rule 39] is to allow the party prevailing on appeal to recover those costs reasonably incurred in prosecuting the appeal.") (citation omitted).

## V. CONCLUSION

For the forgoing reasons, we reverse the ICA's March 19, 2024 Judgment on Appeal to the extent the ICA awarded attorney fees to PBL1. The ICA's Judgment on Appeal is affirmed in all other respects.

| | |
|---|---|
| Margery S. Bronster, Rex Y. Fujichaku, and Sasha A. Hamada for petitioners David Cowan, Nathalie Cowan, and Pauoa Beach 8 LLC | /s/ Mark E. Recktenwald<br><br>/s/ Sabrina S. McKenna<br><br>/s/ Todd W. Eddins<br><br>/s/ Vladimir P. Devens |
| William C. McCorriston and Brett R. Tobin for Exclusive Resorts PBL1, LLC | /s/ Ronald G. Johnson |

