Electronically Filed
Intermediate Court of Appeals
CAAP-18-0000783
19-DEC-2022
10:12 AM
Dkt. 163 MO

NO. CAAP-18-0000783

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

PRINCEVILLE II COMMUNITY ASSOCIATION, a Hawaii
non-profit corporation, by its Board of Directors,
Plaintiff-Appellant,
v.
PRINCEVILLE AT HANALEI COMMUNITY ASSOCIATION,
Defendant-Appellee,
and
JOHN DOES 1-20; JANE DOES 1-20;
DOE PARTNERSHIPS 1-20; DOE ASSOCIATIONS 1-20;
DOE CORPORATIONS 1-20; DOE ENTITIES 1-20;
AND DOE GOVERNMENTAL UNITS 1-20, Defendants

APPEAL FROM THE CIRCUIT COURT OF THE FIFTH CIRCUIT
(CIVIL NO. 14-1-0178)

MEMORANDUM OPINION
(By: Hiraoka, Presiding Judge, and Wadsworth and Nakasone, JJ.)

This appeal stems from a dispute between two planned community associations in the Princeville area of Kauaʻi — Plaintiff-Appellant Princeville II Community Association (**P2CA**) and Defendant-Appellee Princeville at Hanalei Community Association (**PHCA**). In a 2014 complaint, P2CA sought a declaratory judgment that PHCA was required to contribute to the maintenance and repair costs of shared roads and nearby entry features on property owned by P2CA, as well as damages for unjust enrichment. Following a bench trial, the Circuit Court of the Fifth Circuit (**Circuit Court**) entered judgment in favor of PHCA and against P2CA, provided that PHCA will have a duty to contribute to certain future costs of repair and maintenance of

the roads.[1]

P2CA appeals from: (1) the September 14, 2018 "Final Judgment" (**Judgment**) and (2) the October 24, 2018 "Order Denying [P2CA's] Amended Non-Hearing Motion for an Award of Attorneys' Fees and Costs" (**Order Denying P2CA's Fee Motion**), both entered by the Circuit Court.  P2CA also challenges the Circuit Court's: (1) December 1, 2016 "Order Granting [P2CA's] Motion for Partial Summary Judgment Against [PHCA] as to Whether [PHCA] Had and Continues to Have a Duty to Contribute Toward the Maintenance and Repair of the Lot 3 Roadways, Filed on September 16, 2016" (**Partial Summary Judgment Order**); (2) May 25, 2018 "Findings of Fact and Conclusions of Law" (**FOFs/COLs**); and (3) August 22, 2018 "Order Granting [PHCA's] Non-Hearing Motion for an Award of Attorneys' Fees and Costs" (**Order Granting PHCA's Fee Motion**).

For the reasons discussed below, we affirm.

## I. Background

The Judgment resolved all claims in two consolidated cases before the Circuit Court — Civil No. 13-1-0253 (**Case 1**) and Civil No. 14-1-0178 (**Case 2**) — by entering judgment in favor of PHCA and against P2CA (subject to the proviso quoted below) as to all claims in P2CA's complaint in Case 2 (**Complaint**) and dismissing all other claims in both Cases 1 and 2.  Only the claims asserted in P2CA's Complaint against PHCA, as described below, are at issue in this appeal.

On August 28, 2014, P2CA filed its Complaint against PHCA for declaratory relief and unjust enrichment.  The Complaint alleged, among other things, that: (1) in 1991, Princeville Corporation, a real estate development company, submitted four parcels of land, identified as Lots 1, 2, 3, and 4, to the Ka Haku Road Subdivision; (2) Lot 3 includes the beginning of Ka Haku Road from Kuhio Highway, the section of Emmalani Road from Ka Haku Road along the southerly side of Prince Albert Park, a large fountain, and a gate house; (3) the gatehouse, the large fountain, certain landscaping, and two underground pump rooms

---

[1]    The Honorable Kathleen N.A. Watanabe presided.

constitute the entry features of Ka Haku Road Subdivision (**Entry Features**); (4) Princeville Development conveyed Lot 3 to P2CA by deed dated January 4, 2013; (5) Princeville Corporation conveyed Lot 1 to PHCA by deed dated March 25, 1994, which granted a non-exclusive appurtenant easement to PHCA for road purposes over the roadway on Lot 3 to access Prince Albert Park; (6) Lot 3 has been used and continues to be used for ingress and egress by P2CA and PHCA and their respective members, as well as others; (7) P2CA has incurred and will continue to incur substantial costs to maintain and repair the portion of Ka Haku Road on Lot 3 and the Entry Features; and (8) PHCA has not contributed anything toward P2CA's maintenance and repair costs of Lot 3 and the Entry Features. The Complaint sought a declaratory judgment that: (a) PHCA was, and will continue to be, required to contribute to P2CA's costs to maintain and repair Lot 3 and the Entry Features; and (b) if it becomes necessary to replace the roadways on Lot 3 or any of the Entry Features, PHCA would be required to contribute to that cost. The Complaint also sought damages for unjust enrichment, equal to PHCA's proportionate share of the costs of maintaining and repairing Lot 3 and the Entry Features.

On September 16, 2016, P2CA filed a motion for partial summary judgment against PHCA "as to whether [PHCA] had and continues to have a duty to contribute toward the maintenance and repair of the Lot 3 roadways" (**Motion for Partial Summary Judgment**). (Formatting altered.) The Circuit Court granted the motion in part, ruling that "[t]here are no genuine issues of material fact and, as a matter of law, Defendant PHCA has a duty to contribute to the reasonable future costs of repair and maintenance of the Lot 3 roadways."

On November 3, 2016, the Circuit Court entered a "Stipulation For Dismissal With Prejudice As To All Claims Against All Parties Except Those Specified; Order" (**Stipulation for Dismissal**). Pursuant to the Stipulation for Dismissal, the only remaining claims in the consolidated cases were those contained in P2CA's Complaint against PHCA.

Those remaining claims were tried to the court from March 12 to March 15, 2018. On May 25, 2018, the Circuit Court

3

issued the FOFs/COLs.

The following findings of fact (**FOFs**), among others, by the Circuit Court are unchallenged on appeal and thus binding on the parties and the court, see State v. Rodrigues, 145 Hawaiʻi 487, 494, 454 P.3d 428, 435 (2019):

2. [P2CA] owns Lot 3 of the Ka Haku Road Subdivision ("Lot 3").

3. [PHCA] owns Lot 1 of the Ka Haku Road Subdivision ("Lot 1").

. . . .

6. There was prior unity of ownership of all lands presently owned by PHCA and/or by P2CA.

7. Without limitation, there was prior unity of ownership of all lands owned by PHCA and of the land comprising the Ka Haku Road Subdivision.

8. Prior to the creation of the Ka Haku Road Subdivision, the main roadway access used by PHCA to reach the public highway was Old Ka Haku Road.

9. The location of Old Ka Haku Road is reflected on File Plan 2056, within the boundaries of the Ka Haku Road Subdivision.

10. At the time when title to lands now owned by PHCA and title to the land where Old Ka Haku Road was located was severed, it was the intention of the parties owning and/or receiving those lands that PHCA was entitled to use Old Ka Haku Road for road purposes to access the public highway and other locations, on an unrestricted basis.

11. PHCA members were never charged to use Old Ka Haku Road.

12. Old Ka Haku Road no longer exists.

13. An easement for PHCA to have used Old Ka Haku Road for road purposes is implied by the facts and circumstances shown at trial.

14. The current Ka Haku Road ("Ka Haku Road") is located on Lot 3.

15. Ka Haku Road replaced Old Ka Haku Road.

16. Prior to the time when P2CA took title to Lot 3, PHCA was never charged to use the Lot 3 roadways.

17. PHCA used the Lot 3 roadways to access the public highway and other locations, on an unrestricted basis, from the time that the Lot 3 roadways were built until the time that P2CA took title to Lot 3.

18. At all times prior to when P2CA took title to Lot 3, the owner(s) of Lot 3 expected and intended PHCA to use the Lot 3 roadways to access the public highway and other locations, on an unrestricted basis.

19. PHCA continues to use the Lot 3 roadways, and intends to do so indefinitely.

20. The undisputed evidence demonstrates that the implied easement for PHCA to use Old Ka Haku Road for road purposes was relocated to the Lot 3 roadways.

21. PHCA has the same right to use the Lot 3 roadways for road purposes as it had to use Old Ka Haku Road.

22. The Deed dated March 25, 1994, by which title to Lot 1 was conveyed to PHCA ("Lot 1 Deed"), contains the following language:

> TOGETHER with nonexclusive appurtenant easement for road purposes over, across, along and upon the roadway Lots 3 and 4 as shown on File Plan 2056; provided, however, that in the event such roadway lots or any portion thereof is conveyed to the State of Hawaii, County of Kauai or to any other governmental authority, such easement as to such roadway lot or lots so conveyed shall immediately terminate.

23. As part of the conveyance of Lot 1 to PHCA, the grantor intended to grant, and did grant, an easement to PHCA over Lot 3 for road purposes.

. . . .

28. Based on the facts and circumstances surrounding the execution of the Lot 1 Deed, the grantor of the Lot 1 Deed intended to allow PHCA's use of the express easement for road purposes to access the public highway and other locations, on an unrestricted basis.

29. PHCA is authorized to use the Lot 3 roadways for road purposes, regardless of starting point or destination.

30. P2CA took title to Lot 3 by deed dated January 4, 2013.

. . . .

33. P2CA entered into a Maintenance Agreement with Princeville Corporation dated March 21, 1994.

34. Princeville Corporation is described in the Maintenance Agreement as the owner of Lot 3.

35. The Maintenance Agreement provides, without limitation, that Princeville Corporation "shall be solely responsible for the maintenance, repair and replacement, as necessary, of Lot 3 in a safe and clean condition and in good order and repair."

36. The Maintenance Agreement also provides, without limitation, that:

> P2CA and Princeville Corporation desire that Lot 3 shall be held, sold, conveyed, encumbered, hypothecated, leased, used, occupied and improved subject to this Agreement, which shall run with Lot 3, shall be binding upon and inure to the benefit of P2CA and Princeville Corporation and all persons having any right, title or interest in Lot 3 or any portion thereof, their heirs, successors and assigns.

37. An Extension of Maintenance Agreement dated

December 24, 2002 was entered into between P2CA and Princeville Corporation.

38. The Maintenance Agreement, as modified by the Extension of Maintenance Agreement, remained in effect from its inception until P2CA took title to Lot 3.

39. There is no evidence that Princeville Corporation or any successor to its interest in Lot 3 ever filed an action against PHCA, seeking contribution for Lot 3 expenses, prior to the conveyance of Lot 3 to P2CA in 2013.

40. There is evidence that Princeville Corporation intended that PHCA not be charged for the Lot 3 expenses during the period when Princeville Corporation owned Lot 3.

. . . .

44. The Stipulation [for Dismissal] provides, without limitation, as follows:

> Further, [Princeville Development, LLC (**PD**), PRW Princeville Development Company, LLC, and Princeville Associates, LLC (collectively, **Developers**)] hereby separately stipulate, and P2CA hereby separately agrees and stipulates, that in the P2CA-Developers Settlement, among other things, Developer provides sufficient funds to P2CA such that P2CA can and is required to repair the entire Ka Haku Road portion of the Ka Haku Entrance from its intersection with Kuhio Highway to its end just prior to the Wyllie Road intersection, including its "stub-ins" to Queen Emma's Drive and Queen Emma's Drive East, in compliance with the appropriate standard provided for by that certain unrecorded Maintenance Agreement dated March 21, 1994, (the "Maintenance Agreement") in which PD agreed to be responsible for the maintenance, repair and replacement, as necessary, of the Ka Haku Entrance until January 1, 2003, at which time PD was to convey fee title to the Ka Haku Entrance to P2CA, which conveyance date, on December 24, 2002, was extended to January 1, 2013, and which conveyance was made on January 7, 2013.

45. Repairs to the concrete portions of the roadways referenced in the Stipulation [for Dismissal] have yet to commence and are not definitely scheduled for commencement.

. . . .

87. The Maintenance Agreement was entered into for the business purposes of Princeville Corporation.

. . . .

90. Princeville Corporation allocated approximately 75% of the Lot 3 expenses to properties it owned within PHCA, by contract.

91. Such allocations were made for the business purposes of Princeville Corporation.

92. Approximately 75% of the Lot 3 expenses are currently paid by members of PHCA.

. . . .

6

> 95. PHCA was informed of Princeville Corporation's decision to remove and to replace Old Ka Haku Road after that decision was made.
>
> 96. Princeville Corporation did not intend that its choice to make additional improvements to its own land, beyond road replacement, for its own business purposes, would impose a financial obligation upon PHCA itself.
>
> 97. P2CA did not construct the Entry Features.
>
> . . . .
>
> 108. P2CA has not given PHCA possession of anything with respect to the Entry Features.
>
> 109. P2CA has not given PHCA an interest in anything with respect to the Entry Features.
>
> 110. The Entry Features do not add to PHCA's security.
>
> 111. The Entry Features do not add to PHCA's advantage, as determined by PHCA.

(Original brackets omitted.)

In its conclusions of law (**COLs**), the Circuit Court ruled, among other things:

> 9. PHCA presently has an implied easement to use the Lot 3 roadways for road purposes.
>
> 10. PHCA is authorized to use the Lot 3 roadways for road purposes, regardless of starting point or destination pursuant to the implied easement.
>
> 11. PHCA has an express easement appurtenant to use the Lot 3 roadways for road purposes.
>
> . . . .
>
> 15. The circumstances surrounding the creation of the easement appurtenant at issue here allow the Court to conclude that PHCA is authorized to use the Lot 3 roadways without restriction.
>
> 16. PHCA is authorized to use the Lot 3 roadways for road purposes, regardless of starting point or destination pursuant to the express easement.
>
> 17. PHCA has a duty to contribute to the reasonable future costs of maintenance and repair of the Lot 3 roadways.
>
> 18. In fashioning a remedy, the Court takes into account various facts and circumstances, including, without limitation, the terms of the Maintenance Agreement as well as the terms of the Stipulation [for Dismissal], and concludes that PHCA's duty to contribute to the reasonable future costs of maintenance and repair of the Lot 3 roadways shall be deemed to commence once repairs to the concrete portions of the Lot 3 roadways are completed.
>
> 19. PHCA has no duty to contribute to the past, present or future maintenance and/or repair costs of the Entry Features.

7

20.  Alternatively, PHCA's contribution to the reasonable future costs of maintenance and repair of the Lot 3 roadways fairly and reasonably addresses all of P2CA's claims (including with respect to the Entry Features) in light of multiple factors, including, but not limited to:

A.  PHCA's lack of use of the Entry Features;

B.  The payment of approximately 75% of the Lot 3 expenses by certain PHCA members;

C.  The absence of those PHCA members from this case;

D.  The absence of other Lot 3 easement holders from this case;

E.  P2CA's choice to make no demand for contribution from certain Lot 3 easement holders absent from this case;

F.  The expense allocations made by Princeville Corporation;

G.  The fact that the Lot 3 improvements were built by a predecessor in interest to P2CA;

H.  The transfer of Lot 3 to P2CA for a nominal consideration;

I.  The insufficiency of objective data concerning the frequency and intensity of use of the Lot 3 roadways by all users;

J.  Evidence that much of the alleged Lot 3 expenses relate to operation of the Entry Features rather than to maintenance and/or repair expenses;

K.  The value of ownership and control of Lot 3; and

L.  P2CA's evident refusal to share decisionmaking authority with PHCA.

21.  P2CA's refusal to allow PHCA to participate meaningfully in decision making concerning Lot 3 is unfair and inequitable in light of its request for relief.

22.  The equitable relief sought by P2CA is not supported by relevant history or by current circumstances.

23.  It is not unfair or unreasonable for P2CA to pay approximately 25% of the Lot 3 expenses in light of its ownership and control of Lot 3.

. . . .

28.  In addition, the Court concludes that P2CA's voluntary settlement with PRINCEVILLE DEVELOPMENT, LLC and PRINCEVILLE ASSOCIATES[,] LLC sufficiently addresses the issue of the condition of Lot 3, including the Entry Features, as of the time that P2CA took title to Lot 3 and up to the present.

29.  PHCA has not been unjustly enriched with respect to Lot 3 for any period prior to P2CA's acquisition of title to Lot 3.

30.  P2CA did not confer a benefit upon PHCA with respect to Lot 3 during any period prior to P2CA's acquisition of title to Lot 3.

31.  PHCA's retention of any benefit relating to Lot 3 that might be deemed to exist, for any period prior to P2CA's acquisition of title to Lot 3, if any, is not unjust.

32.  P2CA had an adequate remedy at law with respect to any claims concerning the condition of the Lot 3 roadways and the Entry Features while the Maintenance Agreement and the Extension of Maintenance Agreement were in effect.

33.  P2CA does not confer any present benefit upon PHCA with respect to the Entry Features.

. . . .

42.  In all events, the Court, in the exercise of its discretion, declines to hold PHCA responsible to contribute to Lot 3 expenses other than for the reasonable future costs of maintenance and repair of the Lot 3 roadways.

43.  The Court concludes, however, that PHCA's intended future use of the Lot 3 roadways requires the Court to fashion a remedy that balances the equities now that the matter has been before the Court and the parties' respective positions have been litigated.

44.  The Court expressly determines that prospective application of the equitable remedy provided for herein is appropriate based on the facts and circumstances of this case.

45.  The Court therefore holds that PHCA has a duty to contribute to the reasonable future costs of repair and maintenance of the Lot 3 roadways.

46.  PHCA's contribution shall be 100% of the future reasonable maintenance and repair expense of the portions of the Lot 3 roadways that are presently in asphalt.

On July 20, 2018, PHCA filed a non-hearing motion for an award of attorneys' fees and costs (**PHCA's Fee Motion**).  On August 22, 2018, the Circuit court entered the Order Granting PHCA's Fee Motion, which awarded PHCA attorneys' fees in the amount of $521,564.28 and costs in the amount of $43,486.73.

On September 14, 2018, the Circuit Court entered the Judgment.

On September 28, 2018, P2CA filed an amended non-hearing motion for an award of attorneys' fees and costs (**P2CA's Fee Motion**).  On October 24, 2018, the Circuit Court entered the Order Denying P2CA's Fee Motion.

This appeal followed.

## II. Points of Error

P2CA raises five points of error on appeal, contending:

(1) "The [Circuit] Court erred when it concluded, as a matter of law, in [the Partial Summary Judgment Order] that PHCA only had a duty to contribute to the reasonable future costs of

9

repair and maintenance of the Lot 3 roadways and did not have that same duty to contribute toward the maintenance and repair costs already incurred by P2CA from when Lot 3 was conveyed to P2CA in January 2013."

(2) "It was clearly erroneous for the [Circuit] Court to exclude the infrastructure for the roadways and the landscaping and Entry Features in its determination as to what constituted the easement."

(3) The Circuit Court's FOF 106 – that "[t]he frequency and intensity of the Lot 3 roadways has not been proven objectively" – is clearly erroneous.

(4) The Circuit Court abused its discretion in determining "that PHCA's duty to contribute toward the reasonable future costs of repair and maintenance of the Lot 3 roadways would be limited to . . . the portions of the Lot 3 roadways that are presently in asphalt . . . ."

(5) The Circuit Court abused its discretion in granting PHCA's Fee Motion and in denying P2CA's Fee Motion.

### III. Discussion

**A. Motion for Partial Summary Judgment**

In its Motion for Partial Summary Judgment, P2CA argued that it was entitled to summary judgment "on the issues of whether, as a matter of law, PHCA was, and will continue to be, required to contribute to P2CA's costs to maintain and repair the Lot 3 Roadways[.]"[2/]  P2CA broke down these issues as follows:

> 1.  As a matter of law, PHCA was required to contribute to P2CA's costs to maintain and repair the Lot 3 Roadways [(**Issue 1**)].
>
> 2.  As a matter of law, PHCA is required to contribute to P2CA's future costs to maintain and repair the Lot 3 Roadways, provided it continues to use the Lot 3 Roadways [(**Issue 2**)].

---

[2/]     In its supporting memorandum, P2CA defined the "Lot 3 Roadways" as follows:  "Lot 3 consists, in part, of sections of two roads:  Ka Haku Road beginning at Kuhio Highway and proceeding north along the east side of Lots 2 and 1 and Emmalani Drive that proceeds west off of Ka Haku Road between Lots 2 and 1 . . . ."  In its memorandum in opposition, PHCA did not dispute P2CA's definition, but generally referred to the "Lot 3 roadway" or the "Lot 3 roadways."  The Partial Summary Judgment Order refers to the "Lot 3 roadways."

In the Partial Summary Judgment Order, the Circuit Court ruled that "as a matter of law, Defendant PHCA has a duty to contribute to the reasonable future costs of repair and maintenance of the Lot 3 roadways." (Emphasis added.) The Circuit Court did not expressly resolve Issue 1, *i.e.*, whether PHCA was required to contribute to costs already incurred by P2CA to maintain and repair the Lot 3 Roadways. Accordingly, we construe the Partial Summary Judgment Order as impliedly denying summary judgment as to Issue 1. See, e.g., Kawamata Farms, Inc. v. United Agric. Prod., 86 Hawaiʻi 214, 233, 948 P.2d 1055, 1074 (1997) ("However, because the Circuit Court's order only partially granted summary judgment, the Circuit Court impliedly denied summary judgment with respect to the Plaintiffs' negligence and strict liability claims . . . . ").

On appeal, P2CA contends that the Circuit Court erred in concluding that PHCA "only had a duty to contribute to the reasonable future costs of repair and maintenance of the Lot 3 roadways and did not have that same duty to contribute toward the maintenance and repair costs already incurred by P2CA from when Lot 3 was conveyed to P2CA in January 2013." In other words, P2CA contends that the Circuit Court erred in failing to grant partial summary judgment as to Issue 1.

Following a trial on the merits, "an order denying [a] motion [for summary judgment] [can]not be appealed if denial was based on the presence of factual questions for the jury, but [can] be appealed if based on questions of law." Bhakta v. Cnty. of Maui, 109 Hawaiʻi 198, 209, 124 P.3d 943, 954 (2005) (quoting Larsen v. Pacesetter Sys., Inc., 74 Haw. 1, 17-18, 837 P.2d 1273, 1282-83 (1992)); see Gump v. Walmart Stores, Inc., 93 Hawaiʻi 428, 437, 5 P.3d 418, 427 (App. 1999), aff'd in part and rev'd in part on other grounds, 93 Hawaiʻi 417, 5 P.3d 407 (2000) (applying the dual framework established by Larsen, *i.e.*, "that a denial of summary judgment based on the presence of factual issues is not reviewable, while a denial based on questions of law is.").

Here, P2CA has not established that the Circuit Court's partial denial of the Motion for Partial Summary Judgment was

11

based on a question of law, as opposed to the presence of factual questions.  The Partial Summary Judgment Order is silent as to the basis for denying summary judgment as to Issue 1.  Similarly, the transcript of the hearing on the motion fails to shed light as to the basis of the Circuit Court's denial of summary judgment as to Issue 1.  Cf. Gump, 93 Hawaiʻi at 437, 5 P.3d at 427 ("The transcript of the hearing on the motion provides . . . some inkling as to the basis of the court's denial.").

In the memorandum supporting its Motion for Partial Summary Judgment, P2CA contended that it was entitled to partial summary judgment on Issues 1 and 2 because there was no dispute that:  (1) PHCA has an easement over the Lot 3 Roadways; (2) PHCA has a duty to contribute to the maintenance and repair of the Lot 3 Roadways, based on Ass'n of Apartment Owners of Wailea Elua v. Wailea Resort Co., 100 Hawaiʻi 97, 105-07, 58 P.3d 608, 616-18 (2002), and Restatement (Third) of Property (**Restatement**) § 4.13(1) (1998); and (3) "all users must contribute to the maintenance costs," based on principles of equity.  (Formatting altered.)  In response, PHCA argued that partial summary judgment was improper because, among other things:  (1) "the general equitable principle" stated in Wailea Elua must yield to the contrary intent of the parties, as reflected in the circumstances surrounding creation of the Lot 3 roadway easement, consistent with Restatement §§ 4.1 and 4.11; (2) PHCA has prior rights to use the Lot 3 roadway without payment, based on the developer's intent; (3) P2CA's claim is untimely because it "slept on its own rights"; (4) questions of intent regarding the creation of the Lot 3 roadway easement "pervade this case"; and (5) P2CA's claim for past amounts involves genuine issues of material fact as to whether P2CA failed to mitigate its alleged damages.

On this record, P2CA has failed to show that the Circuit Court's denial of partial summary judgment as to Issue 1 was based on a question of law, as opposed to the presence of genuine issues of material fact.[3/]  We thus conclude that P2CA is

---

[3/]     Indeed, following trial, the Circuit Court concluded "in light of multiple factors" that PHCA's contribution to the reasonable future costs of maintenance and repair of the Lot 3 roadways fairly and reasonably addressed all of P2CA's claims.  COL 20 (emphasis added), quoted supra.

not entitled to review of the Partial Summary Judgment Order, to the extent it denied partial summary judgment as to Issue 1.

## B. Nature and Scope of the Easement

The Circuit Court determined the nature and scope of PHCA's easement in COLs 9-11 and 15-16, quoted above.  P2CA does not challenge these COLs.  Instead, P2CA contends that the Circuit Court erred in "exclud[ing] the infrastructure for the roadways and the landscaping and Entry Features in its determination as to what constituted the easement."[4]  Relatedly, P2CA summarily challenges FOFs 46-61, 66-85, and 98-99,[5] which

_____

[4]     In its opening brief, P2CA refers repeatedly to the "infrastructure," "landscaping," and "Entry Features," but does not define these terms.  Moreover, P2CA appears to use these terms in the opening brief in a manner that is not entirely consistent with the definitions stated in P2CA's Complaint against PHCA.  The Complaint defines:  (a) "Entry Features" as "the gate house and the large fountain on Lot 3, the Landscaping, and the Pump Rooms"; (b) "Landscaping" as "extensive landscaping and two (2) smaller fountains located on either side of the Lot 3 gate house"; and (c) "Pump Rooms" as "[t]wo (2) []underground pump rooms which are located off Lot 3 [and] are connected to and operate the large fountain on Lot 3 and the two (2) smaller fountains on either side of the gate house by way of pipes, electrical wires, conduits and other fixtures[.]"  In the FOFs/COLs, the Circuit Court adopted the definition of "Entry Features" stated in the Complaint.

[5]     These FOFs state:

46.  There is a fountain depicting Neptune located on Lot 3 ("Neptune fountain").

47.  PHCA does not use the Neptune fountain.

48.  PHCA's use of the Lot 3 roadways for road purposes does not unreasonably burden P2CA with respect to the Neptune fountain.

49.  PHCA's use of the Lot 3 roadways for road purposes does not cause wear or deterioration to the Neptune fountain.

50.  P2CA controls the Neptune fountain.

51.  PHCA does not control the Neptune fountain.

52.  P2CA has declined to allow PHCA to participate meaningfully in decision making concerning Lot 3, including, but not limited to, with respect to the Neptune fountain.

53.  PHCA would decommission the fountain if given the opportunity to do so.

54.  There is a gate house located on Lot 3.

55.  PHCA does not use the gate house.

56.  The gate house has not been in use for years, since prior to at least 2010.

13

57.  PHCA's use of the Lot 3 roadways for road purposes does not unreasonably burden P2CA with respect to the gate house.

58.  PHCA's use of the Lot 3 roadways for road purposes does not cause wear or deterioration to the gate house.

59.  P2CA controls the gate house.

60.  PHCA does not control the gate house.

61.  P2CA has declined to allow PHCA to participate meaningfully in decision making concerning Lot 3, including, but not limited to, with respect to the gate house.

. . . .

66.  There is landscaping on Lot 3.

67.  The landscaping located on Lot 3 is primarily grass.

68.  The landscaping located on Lot 3 is beyond the Lot 3 roadway shoulder, described by the curb.

69.  PHCA does not use the landscaping located on Lot 3.

70.  PHCA's use of the Lot 3 roadways for road purposes does not unreasonably burden P2CA with respect to the landscaping located on Lot 3.

71.  PHCA's use of the Lot 3 roadways for road purposes does not cause wear or deterioration to the landscaping located on Lot 3.

72.  P2CA controls the landscaping located on Lot 3.

73.  PHCA does not control the landscaping located on Lot 3.

74.  P2CA has declined to allow PHCA to participate meaningfully in decision making concerning Lot 3, including, but not limited to, with respect to the landscaping located on Lot 3.

75.  The pump rooms referenced in P2CA's Complaint are located off Lot 3 and operate the Neptune fountain.

76.  PHCA does not use the pump rooms.

77.  PHCA's use of the Lot 3 roadways for road purposes does not unreasonably burden P2CA with respect to the pump rooms.

78.  PHCA's use of the Lot 3 roadways for road purposes does not cause wear or deterioration to the pump rooms.

79.  P2CA controls the pump rooms.

80.  PHCA does not control the pump rooms.

81.  P2CA has declined to allow PHCA to participate meaningfully in decision making concerning Lot 3, including, but not limited to, with respect to the pump rooms.

82.  None of the "Entry Features," as that term is defined in P2CA's Complaint, existed at the time when title to lands now owned by PHCA and title to the land where Old Ka Haku Road was located was severed.

14

appear to identify the Entry Features on or near Lot 3; describe the use and control of, as well as decision-making regarding, these features; and determine whether these features burden P2CA or confer any benefit on PHCA.

We review findings of fact and findings of fact that present mixed questions of fact and law under the clearly erroneous standard. See Kalima v. State, 148 Hawaiʻi 129, 143, 468 P.3d 143, 157 (2020).

> A finding of fact or a finding of fact that presents mixed questions of fact and law is clearly erroneous when, "despite evidence to support the finding, the appellate court is left with the definite and firm conviction in reviewing the entire evidence that a mistake has been committed."

Id. (quoting Bremer v. Weeks, 104 Hawaiʻi 43, 51, 85 P.3d 150, 158 (2004)). Such a finding is also clearly erroneous when the record lacks substantial evidence to support it. See Birano v. State, 143 Hawaiʻi 163, 181, 426 P.3d 387, 405 (2018) (quoting O'Grady v. State, 140 Hawaiʻi 36, 43, 398 P.3d 625, 632 (2017)).

P2CA does not provide any argument as to why any of the challenged FOFs are clearly erroneous. See HRAP Rule 28(b)(7). Nor does P2CA cite any evidence in the record that contradicts or undermines any of the challenged FOFs. See id. Instead, P2CA simply makes the following assertions, without any citation to the record or any relevant authority:

> The purpose and intent of Lot 3 was to create an entrance into all of Princeville . . . to include all of the infrastructure necessary for the roadway as well as the additional features that would make the roadway and entrance. It is unreasonable to separate each separate item

83. The Entry Features are not depicted on File Plan 2056.

84. The Entry Features were not built for the benefit of PHCA.

85. The Entry Features are not part of any easement held by PHCA.

. . . .

98. Whatever benefit that PHCA may have received by virtue of the construction of the Entry Features, if any, was conferred gratuitously and not by P2CA.

99. The operation of the Entry Features by P2CA does not constitute a benefit to PHCA, as determined by PHCA.

15

> in an easement to determine whether it is part of or not part of the easement.

See id. Rule 28(b)(4) and (7).

On this record, P2CA has not presented a discernible argument explaining why the challenged FOFs are clearly erroneous or how the Circuit Court erred in determining the scope of the easement held by PHCA. P2CA's "failure to comply with HRAP 28(b)(4) [and (7)] is alone sufficient to affirm the [C]ircuit [C]ourt's judgment." Morgan v. Planning Dep't, Cnty. of Kauai, 104 Hawaiʻi 173, 180, 86 P.3d 982, 989 (2004); see Hawaii Ventures, LLC v. Otaka, Inc., 114 Hawaiʻi 438, 478, 164 P.3d 696, 736 (2007) (stating that "an appellate court is not obliged to address matters for which the appellant has failed to present discernible arguments" (citing HRAP Rule 28(b)(7))). Accordingly, P2CA's challenge to FOFs 46-61, 66-85, and 98-99 is deemed waived. See HRAP Rule 28(b)(7).

In any event, we conclude that the Circuit Court did not clearly err in finding that the Entry Features are not part of PHCA's easement to use the Lot 3 roadways for road purposes. "An easement should be interpreted to give effect to the intention of the parties who created it to carry out the purpose for which it was created, as ascertained from the language of [the] instrument and the circumstances surrounding its creation." Polumbo v. Gomes, No. CAAP-13-0003145, 2018 WL 1082986, at *6 (Haw. App. Feb. 28, 2018) (mem.) (citing Restatement § 4.1 (2000)); see also Restatement § 4.1 cmt d ("In interpreting expressly created servitudes, the expressed intention of the parties is of primary importance. Their intention is ascertained from the servitude's language interpreted in light of all the circumstances."). "Questions of intent are ultimately questions of fact for the trier of fact to resolve." Lee Ching v. Loo Dung, 145 Hawaiʻi 99, 110, 446 P.3d 1016, 1027 (App. 2019), rev'd on other grounds, 148 Hawaiʻi 416, 477 P.3d 856 (2020) (citing Childs v. Harada, 130 Hawaiʻi 387, 397, 311 P.3d 710, 720 (App. 2013)).

In this regard, P2CA does not contest numerous FOFs relevant to the Circuit Court's determinations that PHCA's

16

easement is <u>for road purposes</u> and that the Entry Features are not part of the easement. These include, for example, FOFs 10, 13, 17, 20, 22, 23, 28, 95-97, and 108-11, quoted above. These uncontested FOFs are binding on appeal and support the Circuit Court's determination that the Entry Features are not part of the easement. In addition, P2CA points to no evidence contradicting, among others, FOFs 82-85. On this record, we conclude that the Circuit Court did not clearly err in finding that the Entry Features are not part of the easement held by PHCA.

## C. Frequency and Intensity of Use of Lot 3 Roadways

FOF 106 states: "The frequency and intensity of use of the Lot 3 roadways has not been proven objectively." P2CA contends that FOF 106 "is clearly erroneous considering such use can be inferred by the number of potential users of Lot 3 and where those users are located and there was more than sufficient evidence to support the number of potential users in P2CA and PHCA." More specifically, P2CA points to witness testimony at trial regarding "the difference in the number of units in PHCA as opposed to P2CA." Thus, it appears that P2CA is arguing that the Circuit Court should have inferred the frequency and intensity of use of the Lot 3 roadways based on the greater number of "units," including hotel and residential units, "in PHCA, as opposed to P2CA."

In response, PHCA points out that P2CA offered no evidence at trial of who ***actually*** uses the Lot 3 roadways. PHCA also argues that P2CA did not account for even all ***potential*** users of the Lot 3 roadways, including numerous other holders of easements to use Lot 3, identified in FOF 100, as well as the public.[6]

We conclude that substantial evidence supports FOF 106, and we are not left with a definite and firm conviction that a mistake has been made. The witness testimony regarding the number of units in each of the two planned communities did not

---

[6] We note that PHCA's evidence of potential use of the Lot 3 roadways based on the number of units in the respective communities also does not account for the fact that there is a separate entry to Princeville at Hanalei through Hanalei Plantation Road.

directly establish the frequency and intensity of use of the Lot 3 roadways by any objective (*i.e.*, observable or verifiable) means.  P2CA is essentially disputing the Circuit Court's decision not to draw P2CA's preferred inference from indirect, and arguably incomplete, evidence.  "We . . . give full play to the province of the trier of fact to determine credibility, weigh the evidence, and draw rational inferences from the facts." State v. Horton, CAAP-21-0000121, 2021 WL 4551318, at *3 (Haw. App. Oct. 5, 2021) (SDO) (quoting State v. Lioen, 106 Hawaiʻi 123, 130, 102 P.3d 367, 374 (App. 2004)).  On this record, we conclude that FOF 106 is not clearly erroneous.

**D.  Asphalt and Concrete Portions of the Lot 3 Roadways**

COL 46, which actually presents mixed issues of fact and law, states:  "PHCA's contribution shall be 100% of the future reasonable maintenance and repair expense of the portions of the Lot 3 roadways that are presently in asphalt."  P2CA contends that the Circuit Court abused its discretion in determining that PHCA would be responsible for contributing to the future reasonable maintenance and repair costs of the asphalt portions, but not the concrete portions, of the Lot 3 roadways. P2CA argues that this result is inequitable because:  (1) the asphalt portions constitute only 30%, while the concrete portions constitute 70%, of the Lot 3 roadways; and (2) the proportionate use of the Lot 3 roadways by PHCA users is greater than by P2CA users based on the relative number of "units" in each of the two communities.

We first note that P2CA asserts, without any citation to the record, that "the testimony was that the asphalt portion of the roadway made up only 30% of the roadway and the remainder of the roadway was concrete."  "We will not comb through the record to find error" — or alleged testimony — particularly where, as here, the record is thousands of pages.  Pele Defense Fund v. Puna Geothermal Venture, 8 Haw. App. 203, 212, 797 P.2d 69, 74 (1990).  P2CA's naked assertion is therefore disregarded. See HRAP Rule 28(b)(4), (7).

Ultimately, P2CA's argument rests on the premise that

18

the Circuit Court should have allocated the future costs of repair and maintenance according to the parties' relative use of the Lot 3 roadways, which in turn depends upon P2CA's assertion that the proportionate use of the roadway easement should have been inferred based on the relative number of units in the two communities. As previously discussed, however, the Circuit Court was not required to draw this inference based on the evidence presented by P2CA, and in fact, rejected this inference in FOF 106 by finding that the frequency and intensity of use of the Lot 3 roadways had not been proven objectively.

P2CA seemingly ignores this finding, as well as COL 20.I., in arguing that the Circuit Court failed to consider any of the factors set out in Restatement § 4.13 comment d in determining "what would be equitable in this case."[7] In fact, the Circuit Court expressly considered "[t]he insufficiency of objective data concerning the frequency and intensity of use of the Lot 3 roadways by all users." The Circuit Court also considered numerous other relevant equitable factors in its decision regarding PHCA's contribution to the future costs of maintenance and repair of the Lot 3 roadways, as reflected in the FOFs/COLs, including COLs 18, 20-23, and 28.

On this record, we conclude that mixed COL 46 is supported by substantial evidence, and we are not left with a definite and firm conviction that a mistake has been made. Further, the Circuit Court did not abuse its discretion in fashioning the equitable remedy stated in mixed COL 46.

## E. Attorneys' Fees

In the Order Granting PHCA's Fee Motion, the Circuit

---

[7]    Restatement § 4.13 comment d states:

> In allocating costs between the owner of the servient estate and the holders of easements or profits, factors that should be considered include the values of their respective contributions to construction and improvement of any facilities for enjoyment of the easement or profit, including the value of the land contributed by the servient owner, and the amount paid for the easement. In addition, the frequency and intensity of use made by each and the value of any other contributions that enhance the value of the servitude or the servient estate should be taken into account.

Court awarded PHCA attorneys' fees pursuant to HRS § 607-14,[8] "on the basis that such fees are reasonable and were necessarily incurred[,]" and awarded PHCA costs pursuant to HRS § 607-9[9] and HRCP Rules 54 and 68.[10]  In the Order Denying P2CA's Fee Motion, the Circuit Court ruled:

> The Court declines to exercise its discretion, if any, to award attorneys' fees based upon [HRS] § 632-3; the Court finds as fact that Plaintiff P2CA's attorneys' fees were not

---

[8]  HRS § 607-14 (2016) states, in relevant part:

In all the courts, in all actions in the nature of assumpsit and in all actions on a promissory note or other contract in writing that provides for an attorney's fee, there shall be taxed as attorneys' fees, to be paid by the losing party and to be included in the sum for which execution may issue, a fee that the court determines to be reasonable; provided that the attorney representing the prevailing party shall submit to the court an affidavit stating the amount of time the attorney spent on the action and the amount of time the attorney is likely to spend to obtain a final written judgment, or, if the fee is not based on an hourly rate, the amount of the agreed upon fee. The court shall then tax attorneys' fees, which the court determines to be reasonable, to be paid by the losing party; provided that this amount shall not exceed twenty-five per cent of the judgment.

. . . .

The above fees provided for by this section shall be assessed on the amount of the judgment exclusive of costs and all attorneys' fees obtained by the plaintiff, and upon the amount sued for if the defendant obtains judgment.

[9]  HRS § 607-9 states in relevant part:  "(b)  All actual disbursements, . . . sworn to by an attorney or a party, and deemed reasonable by the court, may be allowed in taxation of costs.  In determining whether and what costs should be taxed, the court may consider the equities of the situation."

[10]  HRCP Rule 54(d)(1) states in relevant part:  "Except when express provision therefor is made either in a statute or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs[.]"

HRCP Rule 68 states in relevant part:

At any time more than 10 days before the trial begins, any party may serve upon any adverse party an offer of settlement or an offer to allow judgment to be taken against either party for the money or property or to the effect specified in the offer, with costs then accrued. . . .  An offer not accepted shall be deemed withdrawn and evidence thereof is not admissible except in a proceeding to determine costs.  If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer. The fact that an offer is made but not accepted does not preclude a subsequent offer.

> reasonably and necessarily incurred with respect to the issue upon which P2CA claims to have prevailed, or with respect to any other issue; the Court sustains PHCA's objections to claimed costs and otherwise declines to award costs to P2CA[.]

On appeal, P2CA contends that the Circuit Court abused its discretion in granting PHCA's Fee Motion and in denying P2CA's Fee Motion, "because P2CA should have been deemed the prevailing party since it clearly prevailed on the main disputed issue in the case."

This court reviews the denial or grant of attorney's fees and costs under the abuse of discretion standard. See Oahu Publ'ns, Inc. v. Abercrombie, 134 Hawaiʻi 16, 22, 332 P.3d 159, 165 (2014) (quoting Ranger Insurance. Co. v. Hinshaw, 103 Hawaiʻi 26, 30, 79 P.3d 119, 123 (2003)); Kamaka v. Goodsill Anderson Quinn & Stifel, 117 Hawaiʻi 92, 126, 176 P.3d 91, 125 (2008). "[A]n abuse of discretion occurs where the trial court has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." Oahu Publ'ns, 134 Hawaiʻi at 22, 332 P.3d at 165 (brackets omitted) (quoting Hinshaw, 103 Hawaiʻi at 30, 79 P.3d at 123).

> "[I]n general, a party in whose favor judgment is rendered by the [trial] court is the prevailing party in that court, plaintiff or defendant, as the case may be. Although a plaintiff may not sustain his entire claim, *if judgment is rendered for him, he is the prevailing party for purposes of costs and attorneys' fees*."

Kamaka, 117 Hawaiʻi at 126, 176 P.3d at 125 (internal quotation marks and original brackets omitted) (quoting MFD Partners v. Murphy, 9 Haw. App. 509, 514, 850 P.2d 713, 716 (1992)); Sierra Club v. Dep't of Transp. of State of Haw., 120 Hawaiʻi 181, 216, 202 P.3d 1226, 1261 (2009); see Oahu Publ'ns, 134 Hawaiʻi at 24, 332 P.3d at 167 ("In general, the litigant in whose favor judgment is rendered is the prevailing party." (quoting Wong v. Takeuchi, 88 Hawaiʻi 46, 49, 961 P.2d 611, 614 (1998))).

Where there is no final judgment clearly stating which party prevailed, the court "is required to first identify the princip[al] issues raised by the pleadings and proof in a particular case, and then determine, on balance, which party

21

prevailed on the issues." Sierra Club, 120 Hawaiʻi at 216, 202 P.3d at 1261 (quoting MFD Partners, 9 Haw. App. at 514, 850 P.2d at 716). A party "will be deemed to be the successful party for the purpose of taxing costs and attorney's fees" "where [that] party prevails on the disputed main issue, even though not to the extent of his original contention[.]" Sierra Club, 120 Hawaiʻi at 216, 202 P.3d at 1261 (quoting Food Pantry, Ltd. v. Waikiki Business Plaza, Inc., 58 Haw. 606, 620, 575 P.2d 869, 879 (1978)).

Here, the Judgment plainly states that "Judgment is hereby entered in favor of [PHCA] and against [P2CA]; provided only that PHCA shall have a duty to contribute to the reasonable future costs of repair and maintenance of the Lot 3 roadways to the extent specified in the [FOFs/COLs.]"[11/] (Emphasis added.) Because judgment was rendered for PHCA, it was the prevailing party for purposes of attorneys' fees pursuant to HRS § 607-14, and the Circuit Court did not abuse its discretion in awarding attorney's fees to PHCA on that basis. See Kamaka, 117 Hawaiʻi at 126, 176 P.3d at 125; see Sierra Club, 120 Hawaiʻi at 216, 202 P.3d at 1261 ("Kamaka presents the general rule for prevailing parties, as discussed within the context of HRS § 607-14[.]").

In any event, on balance, PHCA prevailed on the principal issues raised in the litigation. As P2CA stated in its Motion for Partial Summary Judgment, "P2CA brought claims against PHCA seeking declaratory rulings requiring PHCA to contribute toward the maintenance and repair of Lot 3," including the roadways and Entry Features, "and damages for their failure to do so." (Emphasis added.) In fact, P2CA's Complaint asserted two claims against PHCA. The first claim, for declaratory relief, sought a declaratory judgment that PHCA was, and will continue to be, required to contribute to P2CA's costs to maintain and repair Lot 3, including the roadways and the Entry Features. The second claim, for unjust enrichment, sought damages equal to PHCA's

---

[11/] In the FOFs/COLs, the Circuit Court concluded that "PHCA has a duty to contribute to the reasonable future costs of repair and maintenance of the Lot 3 roadways" and "PHCA's contribution shall be 100% of the future reasonable maintenance and repair expense of the portions of the Lot 3 roadways that are presently in asphalt."

proportionate share of the costs of maintaining and repairing the Lot 3 roadways and Entry Features. P2CA prevailed only on the issue of whether PHCA has a duty to contribute to the reasonable <u>future</u> costs of repair and maintenance of the Lot 3 <u>roadways</u>,[12/] and then only with respect to portions of the Lot 3 roadways that are currently in asphalt. PHCA prevailed on the disputed main issues of whether PHCA had been required (*i.e.*, in the past) to contribute to P2CA's costs to maintain and repair the Lot 3 roadways and Entry Features, and whether P2CA was entitled to damages based on PHCA's proportionate share of those past costs. PHCA also prevailed on the disputed issues of whether it will be (*i.e.*, in the future) required to contribute to P2CA's costs to maintain and repair the Entry Features, as well as the concrete portions of the roadways.

On this record, we conclude that on balance, PHCA prevailed on the disputed main issues raised by the pleadings and proof. Accordingly, the Circuit Court did not abuse its discretion in awarding attorneys' fees and costs to PHCA, and in declining to award attorneys' fees and costs to P2CA, on the basis that PHCA was the prevailing party.[13/]

### IV. Conclusion

For the reasons discussed above, we affirm the following:

(1) the December 1, 2016 "Order Granting [P2CA's] Motion for Partial Summary Judgment Against [PHCA] as to Whether [PHCA] Had and Continues to Have a Duty to Contribute Toward the Maintenance and Repair of the Lot 3 Roadways, Filed on September 16, 2016";

(2) the May 25, 2018 "Findings of Fact and Conclusions of Law";

---

[12/] In its Motion for Partial Summary Judgment, P2CA described this issue as one of two "threshold issues," suggesting it was not the disputed main issue in the litigation.

[13/] P2CA also asserts that it was entitled to attorneys' fees under HRS § 632-3 and <u>Hinshaw</u>, 103 Hawaiʻi at 26, 79 P.3d at 127, but makes no discernible argument as to why that is so in these circumstances. The argument is thus deemed waived. <u>See</u> HRAP Rule 28(b)(7); <u>Hawaii Ventures</u>, 114 Hawaiʻi at 478-79, 164 P.3d at 736-37.

(3) the August 22, 2018 "Order Granting [PHCA's] Non-Hearing Motion for an Award of Attorneys' Fees and Costs";

(4) the September 14, 2018 "Final Judgment"; and

(5) the October 24, 2018 "Order Denying [P2CA's] Amended Non-Hearing Motion for an Award of Attorneys' Fees and Costs."

DATED:  Honolulu, Hawaiʻi, December 19, 2022.


On the briefs:

John A. Morris,
Arlette S. Harada, and
Dan C. Oyasato
(Ekimoto & Morris)
  for Plaintiff-Appellant.

Philip S. Nerney
(Law Offices of Philip S.
Nerney, LLLC) and
Robert P. Richards
(Myhre, Tsuchida, Richards &
Storm, AAL, ALC)
  for Defendant-Appellee.

/s/ Keith K. Hiraoka
Presiding Judge


/s/ Clyde J. Wadsworth
Associate Judge


/s/ Karen T. Nakasone
Associate Judge